## STATE v. DORAN.

Laws 1911, c. 15, defining the manner of taking appeals, and requiring reference to the pages of the transcript of the record where alleged error is found, etc., does not modify the law and rules of the Supreme Court as to assignments of errors on which a party will rely on motion for new trial, or on appeal, and the statement of facts in the brief of appellant must contain every fact, as well as assignment of error formerly required to be contained in the abstract, to the end that the appellate court may have before it so much of the facts as may be necessary to an understanding of the errors relied on and discussed in the brief.

An assignment of error that "the court erred in overruling a motion for new trial for that the law under which accused was found guilty * * * is unconstitutional, and the verdict of the jury was contrary to the law and the evidence," does not present for review the question of the sufficiency of the evidence to sustain the verdict.

The court on appeal will presume that issues of fact were submitted under proper instructions, in the absence of any attack on the instructions.

Where there is some competent evidence to sustain the verdict, the Supreme Court will not review the sufficiency of the evidence.

A statute regulating the practice of medicine is within the police power of the state.

The statute regulating the practice of medicine, and prescribing the qualifications for the lawful practice of medicine, and which permits those practicing in the state at the time of the passage of the statute to continue without other evidence of competency, is not invalid as discriminating between persons or classes because permitting practicing physicians to continue in the practice.

The provisions in Laws 1903, c. 176, §§ 1, 7, 8, 10, 22, 23, creating a medical board for the examination, licensing, and registration of physicians, requiring persons desiring to begin the practice of medicine to apply to the board for a license, prescribing the mode for the examination of applicants, and providing that the act shall not apply to resident physicians in the state licensed and practicing at the time of the taking effect of the act, and prescribing a penalty for the practice of medicine without a license, are within the police power, and valid.

Laws 1903, c. 176, § 19, requiring itinerant physicians to pay an annual sum for a license to practice as such, imposes an occupation tax within Const. art. 6, § 18, requiring that taxation shall be equal and uniform.

The Legislature may impose an occupation tax on physicians and surgeons.

A statute classifying medical practitioners into two classes, based on the mode in which the business is carried on, making one

class of those who practice as itinerant physicians, and making those who follow other modes of practice another class, is not unreasonable, and the imposition of a tax on itinerant physicians is not in conflict with Const. art. 6, § 16, requiring that taxation shall be equal and uniform.

Laws 1903, c. 176, § 22, exempting from the tax imposed by section 19 on itinerant physicians all resident physicians of the state regularly licensed and practicing in the state at the time of the taking effect of the act, viewed as an attempt to exempt a portion of a class conducting the practice of medicine as itinerant physicians, is violative of Const. art. 6, § 18, providing that all taxation shall be equal and uniform.

The section, if regarded as an attempted classification of itinerant practitioners, is violative of the fourteenth amendment to the federal Constitution as discriminating against citizens of other states, for the classification made rests solely on the fact of residence and practice in the state prior to the taking effect of the act.

The invalidity of section 22, Laws 1903, c. 176, exempting from the tax imposed by section 19 on itinerant physicians resident physicians of the state regularly licensed and practicing in the state at the time of the taking effect of the act, renders invalid all the provisions of the statute imposing a tax on itinerant physicians, but does not affect the validity of the other portions of the act governing the examination of persons seeking to practice medicine in the state, and requiring them to obtain a license from the state board of medical examiners.

(Opinion filed, January 17, 1912.)

Appeal from Circuit Court, Grant County. Hon. FRANK MC-NULTY, Judge.

John Edmond Doran was convicted of practicing medicine as an itinerant physician without a license, and he appeals. Reversed and remanded, with directions to dismiss the complaint.

*Geo. H. Fletcher,* for appellant.

All taxation shall be equal and uniform. Sec. 17, article 6, Constitution of South Dakota. Under chapter 176 of the Session Laws of South Dakota for the year 1903, itinerant physicians are divided into two classes: (1) those who were residing in the state on March 5, 1903, and (2) those who were not. The latter must, while the former need not, pay $500.00 license fee or tax in order to practice as such itinerant physician. The test is not merit but residence. The law is unconstitutional. State v. Pennoyer, N. H., 5 L. R. A. 709; Jackson v. State, 117 S. W. 818. The constitu-

tional objection to the statute is that it imposes the burden of a license fee upon the defendant, and exempts others of the same class and profession under similar circumstances and conditions. State v. Hinman, 18 Atl. Reporter, 196. The length of time a physician has practiced may furnish a basis of classification, but the place where he resided and practiced cannot furnish such basis and is an arbitrary discrimination making an act based upon it unconstitutional and void. In re Day et al., 50 L. R. A. 519. Under this law some itinerant physicians are taxed $500.00 and others are exempted from such taxation; such a law cannot be sustained as a tax measure or as a police regulation. Mudcking v. Parr, 123 N. W. 408; Jackson v. State, 117 S. W. 818.

*Royal C. Johnson, Atty. Gen., M. Harry O'Brien, Asst. Atty. Gen.,* and *Thad. L. Fuller, State's Atty.,* for the State.

This law does not grant "to any citizen or class of citizens, privileges or immunities which upon the same terms shall not belong to all citizens." The principle of uniform taxation does not apply to this case. The right of a state to protect the welfare of its citizens against impostors and incompetents, who may prey upon the public by going from place to place and thus be more able to escape individual liability, may well come within the police power. 30 Cyc. 1547; State v. Call, 28 S. E. 517; Eastman v. State, 10 N. E. 97; Richardson v. State, 47 Ark. 562; State v. Medical Bd., 32 Minn. 324; People v. Phippin, 70 Mich. 6; Watson v. State, 66 Atl. 635; State v. Green, 14 N. E. 352; Hilliard v. State, 7 Tex. App. Cr. 69.

SMITH, J. Appeal from the circuit court of Grant county. Appellant was convicted of practicing medicine as an itinerant physician without first having obtained a license from the board of medical examiners as required by section 19, c. 176, Laws 1903. The act provides that any physician attempting to practice as an itinerant physician shall, in addition to the ordinary physician's license required under the act, procure an itinerant's license from the state board of medical examiners, for which he is required to pay the sum of $500 per annum. Section 22 of the act provides: "This act shall not apply to resident physicians and surgeons of

this state regularly licensed and practicing in this state at the time
of the taking effect of this act." Section 20 of the act prescribes
a. penalty of not less than $500 nor more than $800 or imprison-
ment in the county jail not less than 30 or more than 90 days
for violation of the provision of the act requiring an itinerant's
license. The information charges the accused with a violation of
this act, and brings him within the exception by alleging that "the
said John Edmond Doran was not a resident physician and sur-
geon of the state of South Dakota regularly licensed and prac-
ticing as such in the state of South Dakota at the time of the
taking effect of chapter 176 of the Session Laws of South Dakota
for the year of 1903." Appellant, in what purports to be a state-
ment of the facts in his brief, says: "Defendant admitted that he
was an itinerant physician, and that he had not paid the license
by law required, but claimed that he was exempt from the pro-
vision of said law, for that he was on the 5th of March, 1903, at
the time of the passage of said act, a resident of this state duly
and regularly licensed and practicing in this state, * * * and
that the evidence of the state showed that he was duly licensed to
practice on the 1st day of October, 1901, and was practicing in
this state on or before March 5, 1903." Appellant further says:
"The contention of the state was that the defendant was not a
resident of the state of South Dakota on March 5, 1903, and
therefore not within the exception of the statute, and the only
evidence in support of this contention is the testimony of one wit-
ness, supported by the advertisement of defendant in the Sioux
Falls Journal." Neither the testimony of the witness referred to
as supporting the state's contention, nor the advertisement, is
made a part of appellant's statement of facts, nor is the attention
of the court directed by proper assignment of error to the question
of the sufficiency of the evidence to sustain the finding of the jury.
It must be presumed that the question of fact as to whether or not
the defendant was a resident of the state on March 5, 1903, was
submitted to the jury under proper instructions. There is no
assignment of error that the evidence is insufficient to sustain the
verdict of the jury upon this issue.

[1] Chapter 15 of the Laws of 1911 has not in any manner modified or changed the requirements of the law and of the rules of this court relating to assignments or specifications of particular errors upon which a party will rely on a motion for a new trial or upon appeal to this court. The provision of the statute requiring that careful reference shall be made therein to the particular page or pages of the transcript of the record where the alleged error is to be found was clearly designed for the convenience of the opposing counsel in examining the record and to assist the court in the examination of conflicting statements of fact in the briefs of counsel, and not for the purpose of requiring the appellate court to search through the original record to find specifications of error and the grounds thereof, which should be contained in the statement of facts required to be contained in the brief. The statement of facts in the brief under the provisions of chapter 15 of the Laws of 1911 should contain every fact and proceeding as well as assignments of error which were formerly required to be contained in the abstract, to the end that the appellate court may have before it so much of the facts and proceedings as may be necessary to a full understanding of the alleged errors relied upon and discussed in appellant's brief.

[2] Appellant prints in his brief four assignments of error, but discusses only assignment numbered four, which is as follows: "That the court erred in overruling the motion for a new trial, for that the law under which the defendant was found guilty of the crime charged in the information herein is unconstitutional and void, and the verdict of the jury was contrary to the law and the evidence. (See transcript motion for new trial.)" This assignment does not present for review the question of the sufficiency of the evidence to sustain the verdict, and, even if it were presented, we could not sustain appellant's contention that the allegation of defendant's non-residence was not proven beyond a reasonable doubt.

[3, 4] It is conceded in appellant's brief that the state offered the testimony of at least one witness, together with certain documentary evidence, tending to show that the accused was a non-

resident at the time of the taking effect of chapter 176, Laws of 1903, under which this prosecution was instituted. We must presume that this issue of fact was submitted to the jury under proper instructions, and, as it is conceded that there was at least some competent evidence to sustain the finding, this court will not review the sufficiency of the evidence. This rule has been so long established in this court that a citation of authorities is unnecessary. Appellant's statement of facts does not disclose whether the appeal was taken from an order denying appellant's motion for a new trial or from the judgment, or both, and, in fact, does not state that any appeal has ever been taken. It does, however, recite that defendant was convicted of the crime of practicing as an itinerant physician without a license, and the brief of appellant's counsel challenges the constitutionality of the law under which the conviction was had. The act is alleged to be unconstitutional because in violation of section 18, art. 6, of the Constitution of this state, which is as follows: "No law shall be passed granting to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." Appellant's brief also refers to section 17, art. 6, of the Constitution of this state: "All taxation shall be equal and uniform."

[5] The enactment of laws regulating the practice of medicine is clearly within the police power of the state, and is sustained by judicial decisions of the highest authority. In the case of In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, it is said: "The power of the state to impose restraints and burdens upon persons and property in conservation and promotion of the public health, good order and prosperity is a power originally and always belonging to the states, not surrendered by them to the general government, nor directly restrained by the Constitution of the United States, and essentially exclusive. And this court has uniformly recognized state legislation, legitimately for police purposes, as not, in the sense of the Constitution, necessarily infringing upon any right which 'has been confided expressly, or by implication, to the national government.'" It is well settled that the state may

prescribe qualifications which persons must possess to lawfully practice medicine and surgery, and may require persons desiring to enter such practice to obtain a license or certificate of proficiency. The method or means by which these qualifications are to be evidenced is very largely, if not wholly, within the exercise of legislative discretion.

[6] The Legislature may permit those practicing in the state at the time the act was passed to continue without diploma or other evidence of competency upon the theory that the fact that they had been engaged in the practice within the state is sufficient evidence of proficiency, and equivalent to an examination and license by the tribunal established by law for that purpose, and such a law will not be held unconstitutional as discriminating between persons or classes. State v. Creditor, 44 Kan. 565, 24 Pac. 346, 21 Am. St. Rep. 306; State v. Call, 121 N. C. 643, 28 S. E. 517; Ex parte Spinney, 10 Nev. 323; Foo Lun v. State, 84 Ark. 475, 106 S. W. 946; Ex parte McNulty, 77 Cal. 164, 19 Pac. 237; 11 Am. St. Rep. 257; Parks v. State, 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190; State v. Kendig, 133 Iowa, 164, 110 N. W. 463; Webster v. State, 130 Ky. 191, 113 S. W. 415; Commonwealth v Jewelle, 199 Mass. 558, 85 N. E. 858; State v. Davis, 194 Mo. 485, 92 S. W. 484, 4 L. R. A. (N. S.) 1023; State v. McCleary, 130 Mo. App. 527, 109 S. W. 638; Little v. State, 60 Neb. 749, 84 N. W. 248, 51 L. R. A. 717; Gulley v. Territory, 19 Okl. 187, 91 Pac. 1037; Deaton v. Lawson, 40 Wash. 486, 82 Pac. 879, 2 L. R. A. (N. S.) 392; 111 Am. St. Rep. 922.

[7] Section 1 of chapter 176, Laws of 1903, creates a medical board of seven members for the examination, regulation, licensing, and registration of physicians and surgeons in the state of South Dakota. Section 7 of the act provides that "on and after the taking effect of this act all persons desiring to begin the practice of medicine or surgery or obstetrics in any of their branches in this state shall make application to said board for a license to practice;" and requires the applicant to pass an examination upon various subjects therein named and defined, and, in addition, requires evidence of medical instruction in a legally organized and

reputable medical college recognized by the board of medical ex·
aminers, and a diploma from such medical college. Section 8 pre·
scribes the mode in which examinations shall be conducted, and
requires the applicant to pay an examination fee of $20. Section
10 of the act provides that the board in its discretion may accept
and license applicants upon the payment of the license fee, without
examination, upon the presentation of a license from the examin
ing boards of other states and territories under certain conditions.
Section 22 of the act provides that this act shall not apply to
" * * * resident physicians and surgeons of this state regu-
larly licensed and practicing at the time of the taking effect of the
act." Section 23 prescribes a penalty of fine or imprisonment of
any person who shall practice medicine or surgery or obstetrics
without having obtained the license required by the act. The pro-
visions of the act referred to are so clearly within the exercise of
the police power of the state as to require no discussion.

[8] Section 19 of the act, which is the section directly in-
volved on this appeal, provides that: "Any physician practicing
medicine, surgery or obstetrics or professing or attempting to
treat, cure or heal diseases, ailments or injuries by any medicine,
appliance or method, who goes· from place to place or from house
to house or by circulars, letters or advertisements solicits persons
to meet him or her for professional treatment at places other than
his office, at the place of his permanent residence, is hereby de-
clared to be an itinerant physician and shall, in addition to the
ordinary physician's license as in this act provided, procure an
itinerant's license from the state board of medical examiners for
which he shall pay to the secretary of the board the sum of five
hundred dollars ($500) per annum, upon the payment of said
sum of $500 the board shall issue to the applicant therefor a
license to practice within the state as an itinerant physician for
one year from the date thereof." Section 20 declares that any
person practicing as an itinerant physician without having pro-
cured this license shall be guilty of a misdemeanor, and be pun-
ished by a fine of not less than $500 nor more than $800, or by
imprisonment in the county jail not less than 30 nor more than

90 days, or by both such fine and imprisonment. It is perfectly clear that section 19 above quoted is not, and does not pretend to be, legislation involving the exercise of police power. It contains nothing requiring special fitness or qualifications for practicing medicine as an itinerant physician, nor does it pretend to be regulatory of such practice. It is plainly an occupation tax, and involves only the exercise of the taxing power. Under this statute, any person desiring to practice medicine in this state, resident or nonresident, is permitted to make application for and to obtain a license, and nothing in the act in any manner limits the right of a nonresident so licensed to practice in this state without the payment of the itinerant license or tax, so long as he does not adopt the methods defined as constituting an itinerant practice. But by section 20 of the act all physicians licensed to practice in and residents of the state at the time of the taking effect of the act, as well as certain other persons named, are exempted from payment of the itinerant license or occupation tax. This statute, as we have said, is clearly an exercise of the taxing power, and is subject to the provisions of section 18, art. 6, of the Constitution, which requires that "all taxation shall be equal and uniform."

[9] The Legislature may lay an occupation tax on physicians and surgeons as upon other professions and occupations. City of Savannah v. Hines, 53 Ga. 616; City of Girard v. Bissell, 45 Kan. 66, 25 Pac. 232; Steiner v. Liggett, 67 Kan. 822, 72 Pac. 577; Holland v. Isler, 77 N. C. 1.

[10] Licensed medical practitioners are divided by this act into two classes, the basis of the classification being the mode in which the business is carried on, namely, those who practice in the mode defined by the statute as itinerants, and those who follow other methods. That such a classification is neither arbitrary nor unreasonable and is within the legislative discretion we have no doubt. The constitutional rule that taxes shall be equal and uniform does not deprive the Legislature of the power of dividing the subjects of license or occupation taxation into classes, and of taxing some and omitting others, when the classification itself is proper. Substantial differences in the mode of carrying on a busi-

ness or profession may be made the basis of classification. But the Constitution does require that an occupation tax shall be equal and uniform as to all persons embraced within the same class. The law is so well settled by the decisions of this court and the almost uniform decisions of the courts of other states that no extended citation of authorities is necessary. In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321.

[11] Section 22 of the act under consideration undertakes to exempt certain classes of physicians from the operation of the act, both as to requirement of an examination and payment of examination fees, and from payment of an itinerant's license tax. The exemption includes all "resident physicians and surgeons of this state regularly licensed and practicing in this state at the time of taking effect of this act." All others are required to pay the itinerant's tax. It may be observed that all resident licensed physicians, although not practicing as itinerants when the act became operative, may take up that mode of practice at any time, and still be exempt from the tax. If this section be viewed as an attempt to exempt a portion of a class conducting a professional practice as itinerant physicians in identically the same manner, it requires no argument to demonstrate its unconstitutionality. It is clear that the practical effect of the act would be that every physician residing and licensed to practice in the state prior to the date of the act may practice as an itinerant, free from the tax, while every person who, even though a resident of the state when the act passed, may have been licensed as a physician after that date, as well as every physician, whether licensed or not, who became a resident of the state after that date, would be subject to the tax. A part of the class engaged in identically the same occupation or profession defined by the statute as itinerant physicians would be exempt from the tax, while all others of the same class are subject to it. The exemption of resident licensed practitioners from the examination fee and other requirements as to qualifications is clearly valid as a proper exercise of legislative discretion within the police power. But the exaction of a license tax is controlled by the constitutional requirement of equality and

uniformity in taxation. Residence within, or residence outside of the state, cannot be made the basis of discrimination in taxation of persons engaged in the same occupation or profession. State v. Hinman, 65 N. H. 103, 18 Atl. 194, 23 Am. St. Rep. 22. That court says: "By an arbitrary test, having no reference to skill, learning, or fitness for the practice of the profession, certain persons are exempted from the payment of a license fee to which others of equal and perhaps superior acquirements and experience are subjected. It is a discrimination founded solely upon the accidental circumstance of residence, or of a change of residence, and falls within the prohibition of the Constitution." The court further says: "The constitutional objection to the statute is that it imposes the burden of a license fee upon certain persons and exempts others of the same class and profession under similar circumstances and conditions." Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064; Ex parte Hawley, 22 S. D. 23, 115 N. W. 93, 15 L. R. A. (N. S.) 138. See, also, Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 129 Am. St. Rep. 238, 15 L. R. A. (N. S.) 195.

[12] If, however, the section be regarded as an attempted classification of itinerant practitioners, the classification rests solely upon the fact of residence and practice in the state prior to a certain date, namely, the date when the act became operative. Such a statute discriminates against citizens of other states, and is in violation of article 14, Const. U. S. Bon Homme County v. Berndt, 13 S. D. 309, 83 N. W. 333, 50 L. R. A. 351; Rodgers v. McCoy, 6 Dak. 238, 44 N. W. 990. See also numerous decisions cited in note f 129 Am. St. Rep. 257.

[13] The exemption of every resident licensed practicing physician within the state at the date of the act from payment of the itinerant license tax, while requiring all others in the same class to pay the tax, is such an integral part of the act establishing the system of occupation taxation upon itinerant medical practitioners as to render the act, so far as it relates to itinerant physicians, wholly void. It is also clear that, if section 22 of the act exempting resident practicing physicians from payment of the tax

be stricken out as unconstitutional, the remaining provisions of the act relating to itinerant physicians are incapable of being executed according to the legislative intent, and are likewise rendered inoperative and void.    We cannot presume that the Legislature would have passed the act had it required the payment of a license tax of $500 by all resident licensed practicing physicians.    Bekker v. White River Valley Ry. 28 S. D. —, 132 N. W. 797; State v. Becker, 3 S. D. 29, 51 N. W. 1018; Kennedy v. C., M. & St. P. Ry. Co., 28 S. D. —, 132 N. W. 802; McDermott v. Dinnie, 6 N. D. 278, 69 N. W. 294.  ·The remaining portions of the act, however, relating to examination and examination fees and other matters incident thereto, in themselves constitute a complete law capable of enforcement, and such as the Legislature, it may be presumed, would have passed without the provisions relating to the occupation license tax.    The act with the unconstitutional provisions eliminated is therefore valid and enforceable as an exercise of the police power of the state.

The judgment of the trial court is reversed, and the case remanded, with directions to dismiss the complaint.