DRING, Administrator, Appellant v. ST. LAWRENCE TWP. of HAND COUNTY, Respondent.

(140 N. W. 246.)

1. **Appeal—Briefs—Abstract of Record—Assignment of Error.**
   Under Laws 1911, Chap. 15, a brief which fails to set forth any assignment of error, or any abstract of parts of record to be reviewed, but does refer to the record where are specifications of error, and refers to parts of the record claimed to bear upon specifications of error, is insufficient to sustain an appeal.

2. **Trial—Reopening Case—Discretion—Credibility of Evidence.**
   The matter of reopening cases is one largely within discretion of trial court, and its decision will not be reversed except for clear abuse of discretion. But where a witness is a public officer who would testify to facts of public record, of probable truthfulness, which involved a sum of about $500.00 as affecting the amount of the verdict; which had been overlooked in his previous testimony, the refusal to open the case for such testimony was a clear abuse of discretion.

3. **Towns—Debt Limit—Void Contract—Subsequent Payment.**

A void claim against a township cannot be considered in determining whether the constitutional debt limit has been exceeded, and the fact that the township afterwards paid the claim in whole or in part is immaterial.

4. **Debt Limit—Loan Applied on Existing Debt—Repayment of Loan.**

So far as money advanced to a township on a bond issue which was invalid, was used to pay an existing indebtedness for artesian wells sunk pursuant to the bond issue therefor, such loan did not increase the existing indebtedness. **Held,** further, that, to that extent, equity and good conscience require that plaintiff be repaid such loan, rather than that this amount be figured as increasing the township debt.

(Opinion filed March 11, 1913.   Rehearing denied April 22, 1913.)

Appeal from Circuit Court, Hand County. Hon. JOHN F. HUGHES, Judge.

Action by William Dring, as administrator, against the Township of St. Lawrence, of Hand County, for recovery for a loan to defendant under a bond issue. From a judgment for plaintiff, claimed to be insufficient, and from an order denying a new trial, plaintiff appeals. Reversed.

For opinion on former appeal see 23 S. D. 624, 122 N. W. 664.

*J. H. Cole,* for appellant.

New trial more readily granted because of smallness of the recovery in actions for breach of contract. But may be granted in actions wherein there is no certain rule for computing damages.   29 Cyc. 848 (11) "Nature of Action."

When record discloses abuse of discretion by trial court, especially when a new trial is denied, Supreme Court will review its action.   N. D. 157-11 S. D. 1-15 S. D. 142.

Constitutional provision as to limitation of indebtedness applies only to interest bearing contracts extended over term of years in, "No city shall become indebted, including existing indebtedness, in the aggregate exceeding 5 per cent of value of taxable property." 86 N. W. 681 (Wis.)

As to funding bonds and indebtedness, see 16 S. D. 135 and 151. 13 S. D. 342 and 37. 12 S. D. 241, and especially, Huron v. 2nd Ward Sav. Bank., 49 L. R. A. 534; 86 Fed. 272; 57 U. S. 38; 30 CCA 38. Also, for side light, 48 L. R. A. 785 and 55 L. R. A. 364

Failure to show that certain warrants for current expenses are within limit of current revenue taxes, and issuance of bonds for the

funding thereof, is not within the Constitutional prohibition, ·since such bonds would not increase the indebtedness of the city.  81 N. W. 468; 76 N. W. 850; 77 N. W. 56; 56 Pac. 701; 61 Pac. 41, 108 Fed. 514, (Lake Co., S. D., v. Bank).

The value of county warrants taken ·up· at the time of issuing funding bonds, cannot be taken into account in determining the validity of such bonds.  ·Cummins v. Lawrence Co., 1 S. D. 158, and affirmed on rehearing in 2 S. D. 452.

"A debt is an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition precedent, which may never be performed and which cannot ripen into a debt until performed."  "Here it depended upon water supply and if not furnished no payment could be required of it."  27 L. R. A. 769 esp. 772.

Reference is also hereby made to 23 S. D. 624, (and Respondent's brief therein), reporting a former review of this cause upon appeal by Defendant.

*A. K. Gardner,* and *John Pusey,* for Respondent.

There is nothing presented to this court for consideration on this alleged appeal, appellant's statement of the case presenting neither facts nor issues, and containing no assignment of error. State v. Doran, (S. D.) 134 N. W. 53; Chap. 15, Sess. Laws, 1911, Noyes v. Lane, 2 S. D. 55; Bem v. Bem, 4 S. D. 138; State v. Johns, (S. D.) 127 N. W. 470; Sucker State Drill ·Co. v. Brock, (N. D.) 123 N. W. 667; Sternberg Co. v. Larson, (N. D.) ·127 N. W. 993; Williams Bros. v. Kelley, 23 S. D. 582.

A most casual examination of appellant's brief discloses the fact that the statement of facts, if it can be so designated, therein contained, is wholly insufficient.  It does not appear therefrom what the pleadings were; no part of the evidence nor the effect thereof is stated; it does not appear whether or not motion for new trial was made; it does not appear whether any appeal has ever been perfected, or, if so, from what it was taken, and, in fact, contains nothing that could properly be designated as a statement of the case. Neither does this printed record contain any assignment of error, but attempts to make some reference to alleged specifications of error said to be contained in the original record.  Appellant's brief was served on February 15, 1912.  State v. Doran, supra.

Appellant's contention as to the method of determining the limit of indebtedness is erroneous.

The following statement as to defendant's financial condition is sustained by the evidence: ·

Assessed valuation, 1892 .............$129,501.00
Limit to which township could have become
indebted (5 per cent of assessed valuation $6,475.01
Indebtedness—

Shreve bonds, issued August, 1892 ......$3,000.00
Outstanding unpaid warrants, ........... 718.75
Due on Mahanna well contract, ..........3,012.50

Total indebtedness, Jan. 7, 1893,.. ......$6,731.20
Less, Cash .................$1,552.02
Uncollected taxes, ............$1,238.42

2,790.44

Net indebtedness, ......................$3,940.76
Limit indebtedness, ........................$6,475.01

WHITING, J.   In the year 1891 the electors of respondent township voted in favor of the issuance of bonds to raise funds for the purpose of sinking artesian wells in various parts of said township.   In pursuance of the authority given by said electors, the township officers, in the year 1891, issued and negotiated bonds to the amount of $3,000, which bonds are known as the "Shreve bonds."   The township officers entered into a contract with one Mahanna for the sinking of a well, and a well was sunk by this party in the year 1892.   In the beginning of the year 1893, for the purpose of raising more money for the well fund, under the authority given at said 1891 election, the trustees of said township issued other bonds to the amount of $5,000, which bonds were sold to one Thomas Dring, who paid said township for the same the sum of $5,000 on January 7, 1893.   Thomas Dring, dying, these bonds and the debt evidenced thereby became the property of his widow, Katharine Dring.   Various sums were paid as interest upon these bonds sufficient to cover the interest thereon up to the year 1900.   In the year 1905 Katharine Dring brought an action upon the bonds, in which action a judgment was rendered adjudging said

bonds to be illegal and void.  Thereafter Katharine Dring brought an action against the said township for the sum of $5,000, together within interest thereon from the year 1900; said action being one for money had and received.  In this action judgment was rendered for the plaintiff; but, upon appeal to this court, the judgment was reversed and the cause remanded for a new trial.  See Dring v. Township of St. Lawrence, 23 S. D. 624, 122 N. W. 664.  A second trial was had in the circuit court, and plaintiff again recovered judgment; but, upon application of the defendant, a new trial was granted by the circuit court.  Prior to the third trial, the plaintiff, Katharine Dring, died, and this action was continued in the name of William Dring as administrator of her estate.  Upon a third trial, judgment was rendered in favor of plaintiff but for about one-half of the amount claimed, and plaintiff, brought this appeal to this court from said judgment and from the order denying a new trial.

[1]  Respondent questions the sufficiency of appellant's brief, contending that the same is not sufficient to present any question for this court's determination, in that there is not any assignment of error in said brief, or any statement or abstract of the record upon the trial.  Appellant's brief wholly fails to set forth a single assignment of error, but does refer to the pages of the original record where will be found the specifications of error upon which appellant relied for a new trial and appellant has discussed such alleged errors.  Appellant's brief contains no abstract whatsoever of the record upon the trial, but does contain references to those parts of the record which he claims bear upon the several specifications of error to which he has made reference in such brief.  This brief is like many that have been presented to this court since the enactment of chapter 15 of the Session Laws of 1911; and it wholly fails to comply with the provisions of such law as the same were construed by this court in the case of State v. Doran, 28 S. D. 486, 134 N. W. 53, decided in January, 1912.  Appellant's brief herein was filed soon after the decision in that case and before the later decisions touching upon this matter.  In Atlas Lumber Co. v. Quirk, 28 S. D. 643, 135 N. W. 172, decided in February, 1912, we said: "Respondent has raised the question that the statement of fact contained in appellant's brief is not sufficient to point out or establish error in that the findings and pleadings are not made a

part 'of such statement. Under the ruling of this court in State v. Doran (28 S. D. 486), 134 N.W. 53, appellant's statement 'of facts was insufficient in some respects; but as the decision in State v. Doran had not been rendered at the time of the filing of appellant's brief, and in consideration of the chaotic state of our statute law upon the subject of what such statement should contain, we have resorted to the original record in this case." In Barcus v. Prokup, 29 S. D. 39, 135 N. W. 756, decided in April, 1912, we said: "The printed record filed herein wholly fails to comply with the provisions of chapter 15, Laws 1911, as construed by this court in the case of State v. Doran (28 S. D. 486), 134 N. W. 53; but, in conformity with what was said in Atlas Lumber Co. et al. v. Quirk (28 S. D. 643), 135 N. W. 172, recently decided by this court, we have examined the original record filed herein."

Appellant's brief was filed March, 1912, and was probably prepared in ignorance of the decision in State v. Doran, supra. This being true, we have seen fit, as in large number of other appeals during the 'past year in which no proper printed record had been prepared, to go through over 500 pages of chaff and straw in search of the grain which, when properly separated, would fill but a small space. The practicing attorney cannot but realize that the attorney who tries a cause in the circuit court, thus becoming familiar with the issues of both law and fact as well as with the history of the trial and record thereof, should be better prepared to make a statement presenting the merits of an appeal from the result of such trial than are the judges of this court, even though we give to the study of the original record, as we have done in this case, far more time than the burdens of our labors justify. This case is a striking illustration of what we have just stated. There was introduced in evidence herein the complete transcript of the evidence received on each of the former trials as well as numerous other exhibits (some of which were the subjects of expert review on the trial), one being the record from the probate court in the matter of the estate of Thomas Dring, making in all a record which it is almost an impossibility for any person to analyze and intelligently present other than some person who took part in the trial at which this record was made. Certainly, in such a case, it is a duty which appellant's counsel owes, not merely to the court, but especially to his client, to use the information which he has gained through

his association with the case throughout its whole history, in the preparation of a record which will fairly present to the appellate court the merits of his appeal.   We are glad to state that the majority of the printed records presented to us have been prepared in compliance with the rules of this court and the provisions of chapter 15 of Laws 1911, as same was construed in State v. Doran. After the publication of the decisions in Atlas Lumber Co. v. Quirk and Barcus v. Prokop, supra, we thought there could be no further misunderstanding as to what the printed records upon appeal should contain, and that thereafter all records would comply with the law and rules of the court.   In this we have been greatly disappointed; months after the publication of those decisions, printed records, similar to the ones that were filed in those cases, have been filed in this court.   In justice to ourselves, and more especially in justice to the litigants whose counsel have, through inadvertence or otherwise, failed to prepare proper printed records upon appeal, this court will hereafter, whenever, in its opinion, the condition of the record presented demands so doing, reject such record, and either dismiss the appeal or require a proper record to be prepared and filed.

[2] The original record herein contains numerous specifications of errors relied upon in the court below and to which appellant has referred in his brief, one of which relates to the refusal of the trial court to reopen the trial and allow further testimony after the cause had gone to the jury and it was ready to report its verdict.   To understand the merits of an assignment based upon this specification as well as to understand some other matters which we desire to discuss, it is necessary to understand the trial court's theory of this case, in accordance with which theory such court made its rulings upon the admission of evidence and gave its instructions to the jury. The following, quoted from the court's instructions, fully reveals the theory upon which the case was tried and submitted:

"Now, the burden is upon the defendant township to show you that this money loaned, or any portion of it, exceeded the constitutional limitation.   In the first place, in order to determine what amount, if any, Thomas Dring or his successors could recover from the township, we will take the first proposition: What is the limit of money the township can go in debt?   We have the assessed valuation of the township, $129,501; 5 per cent. of that would be

$6,475.01. This sum, $6,475.01, was the limit, beyond which St. Lawrence township could not go on January 3 or 7, 1893. That was the limit of indebtedness beyond which she could not go, and any indebtedness or any contract or any obligation she entered into that exceeded that limit would become void. * * * $6,475 was not the amount this township might go into debt at the time she got the money from Thomas Dring, because she had incurred debts to others, and these have to be taken from her limit and the balance is * * * the net limit she could go. For instance, on January 7, 1893, or January 3d, on the assessed valuation the limit of her indebtedness was $6,475; but, prior to obtaining this money from Dring, she had executed her bonds in the sum of $3,000, and these bonds are known in this case as the Shreve bonds. Now, gentlemen, as I have said to you, in order to find the net limit, we must add up what other indebtedness the township had. The first indebtedness we find is the Shreve bonds of $3,000. * * * Now, I instruct you that the warrant indebtedness, whether $718.75 or $700, or whatever figure it is, that must be added to the $3,000 Shreve bonds; so that, if it was $718, it would make $3,718 of indebtedness that the township already owed. * * *

"Now, if we had no other propositions in this case than the Shreve bonds and the warrant indebtedness, it would be very easy, because we would deduct the Shreve bonds and warrant indebtedness, about $3,700, deduct it from $6,475, and that would leave our limit of indebtedness that the township could incur. * * * And if, after deducting the $3,700 from the $6,475, we find it is less than $5,000, whatever it is less, that would be all that the township would be entitled to borrow. But in addition to the Shreve bonds, and in addition to the warrant indebtedness we have in this case another alleged indebtedness, and that is the Mahanna well contract indebtedness, claimed by the defendant to amount to $3,012 and some cents.

"Now, gentlemen, as I have said, all prior indebtedness must first be deducted from the statutory limit of $6,475; all prior indebtedness must be deducted, in order to find the limit that would be due to Thomas Dring; and if you find that there was a contract between Mahanna and the township * * * at the time of the issue of the Dring bonds, that amount, $3,012, should also be added

to the Shreve bonds and warrant indebtedness, in fixing the total amount. * * *

"Now, adding these three items up, the Shreve bonds, the warrant indebtedness of $700 to $718, and whatever you find, if anything was due Mahanna from the township on January 3d, adding these three items together, then, from the total of these three items you must deduct the cash in the treasury and the uncollected taxes.

"Now, I instruct you that counsel has admitted, and it is an established fact, that the cash in the treasury was $1,552.02, and there is no dispute about that. The uncollected tax, I also instruct you, was admitted in the amount of $1,238.42, so there will be no dispute about that. Adding $1,238.42 and the $1,552.02 together makes a total of $2,790.44.

"Now gentlemen, the cash in the treasury and the uncollected taxes must be deducted from the total of the warrant indebtedness, the Shreve bonds and whatever you find was due to Mahanna, if anything. Now, you understand that is very easy. You add up the Shreve bonds and the warrant indebtedness of $718, and whatever you find, if anything, was due Mahanna, and from that sum you substract $2,790.44, the amount of cash on hand and uncollected taxes. That gives you the net indebtedness, and you want to get the net indebtedness. * * *

"Now, you see, you have arrived at the net indebtedness in this way, and this net indebtedness must be subtracted from $6,475, the limit. Substracted from that, it gives you the balance that Thomas Dring's money cannot exceed. Of course, you will find it will be less than $5,000. Whatever it is, that will be the amount that the township received for which they are obligated to pay Thomas Dring. * * * When you have determined what amount the township originally was owing Thomas Dring, the next thing, of course, would be to take this amount and figure interest on it at 7 per cent. per annum from January 7, 1893, up until the first payment; add the interest to the principal and subtract the second payment from that, and so on until you have gone through, and the result will be the amount that your verdict should be for Thomas Dring, that is, the plaintiff, and that, together with interest at the rate of 7 per cent. from the date of the last payment, would be the total amount due him, that is, if anything after you deduct those payments. Of course, if these payments equal and succeed in satisfy-

ing the entire amount as you find it, by these figures, then, of course, there will be nothing due; but, if they do not, then your verdict will be for whatever amount you find with 7 per cent. interest."

Under these instructions the jury were bound to render a verdict in favor of the plaintiff, which verdict, even if the jury found against plaintiff upon all issues in relation to the Mahanna contract and the amount of outstanding warrants, must of necessity be about the amount of the verdict returned. Upon the trial, the county treasurer, called as a witness by plaintiff, had testified, without objection to the amount of uncollected taxes appearing of record. His evidence was taken as conclusive upon this point; defendant making no attempt to dispute same. After testifying, the treasurer ascertained that he had overlooked one item of $235 taxes due defendant county. He made an affidavit to that effect and explained therein how the oversight occurred. Upon such affidavit the plaintiff asked the trial court to reopen the case and allow the evidence of this additional amount of taxes to be received. The matter of re-opening cases is one largely within the discretion of the trial court, and its decision will never be reversed except for a clear abuse of such discretion. Work v. Braun, 19 S. D. 437, 103 N. W. 764. But when we bear in mind that the witness was a public officer who would testify to a fact shown by the public records—thus precluding any probability that his further testimony would be else than the absolute truth—and when we bear in mind that the verdict, if received without this further evidence, must give the plaintiff $235 with interest thereon at 7 per cent. for 18 years (or over $500) less than plaintiff was entitled to, certainly the court, in the furtherance of justice, should have re-opened the case and received the evidence of this witness, and its refusal so to do was a clear abuse of the discretion in it vested.

This one error requires a reversal of the judgment, and therefore a new trial. In view of the fact that there must be a new trial, we feel justified in calling attention to some other matters appearing in the original record herein, as by so doing we may help to avoid further errors in this much litigated cause.

The experts, in testifying to the amount of outstanding wardants on January 9, 1913, based their estimate, at least so far as the two warrants shown on Exhibit L were concerned, upon the amount

that was ultimately paid in taking up such warrants, and not upon the amount due thereon on January 9th. If they made the same error in regard to the warrants shown on Exhibit 2, the total amount testified to by them must have been materially excessive.

[3] The evidence in relation to the Mahanna contract was very unsatisfactory, and we trust that, upon another trial, there may be further light thrown upon this transaction. If the claim of Mahanna was invalid and one that could not have been legally enforced against respondent, it could not be considered in determining the amount of indebtedness existing at the time of the Dring loan, and the fact that the township afterwards paid the claim in whole or in part does not change this fact.

[4] But conceding there was a valid indebtedness of $3,012.50 upon the Mahanna well contract at the time of the Dring loan, should the full amount of that indebtedness, as well as the full amount of the Dring loan, be considered in ascertaining whether the constitutional limitation had been exceeded? It must be borne in mind that the Shreve bonds, the Mahanna contract, and the Dring loan were all entered into under the authority conferred by the 1891 election. The trustees were authorized to issue bonds to sink wells, and, if the second lot of bonds had been issued prior to the date of the Mahanna contract, it is clear that such contract would in no manner have affected the validity of such bonds or of the loan evidenced thereby. In that case such loan would have been valid to the amount of $3,475, providing the assessed valuation had been the same as at the time the loan was actually made, and would have been valid to this amount wholly disregarding the fact that the uncollected taxes were largely in excess of the outstanding warrants, which fact, under the rule announced by the trial court in its instructions, would have increased, by some $800 at least, the amount that could have been lawfully loaned. This money loaned to defendant created a fund from which the Mahanna debt could and should be paid; to the extent to which it was needed to pay the balance due on said debt, it was but a fund to be used in refunding such debt, and, *to the extent of at least nearly $1,500, it was used in the payment of such debt.* While it is held in some states that funding bonds increase the debt limit if they are sold and the proceeds used in paying the debt to be funded—the courts of these states holding that the only method by which an increase of

the indebtedness can be prevented being by an exchange of the funding bonds for the old debt—yet this court, in the case of Insurance Co. v. Mead, 13 S. D. 37, 82 N. W. 78, 48 L. R. A. 785, 79 Am. St. Rep. 876, held that, "where bonds are sold for the purpose of applying the proceeds to the payment of pre-existing indebtedness, there is merely a change in the evidences of such indebtedness and no increase thereof." The Dring loan was made for the purpose of paying for wells sunk under the 1891 law, and, to the extent that the money from said loan was used to pay any indebtedness already incurred for such wells (which, as we have noted, was at least nearly, $1,500, being $3,012.50, the amount of the Mahanna debt, less $1,552.02, cash on hand) such loan did not increase the existing indebtedness. In the case of Doon Township v. Cummins, 142 U. S. 366, 12 Sup. Ct. 222, 35 L. Ed. 1044, in which the majority of the court held to the rule that funding bonds increase indebtedness unless traded for old bonds, Justice Brown, in his dissenting opinion, which was concurred in by Justices Harland and Brewer, well said: "Had the proceeds of these bonds been properly applied, no question could have arisen as to the indebtedness of the township having been increased by their issue."

In the case before us the proceeds of the Dring loan were applied to the payment of the Mahanna debt to the extent necessary to wipe out the same. To the extent to which this money was so applied in paying a valid debt of defendant, equity and good conscience require that plaintiff be repaid, rather than that this amount be figured as increasing the amount of the defendant's indebtedness. We think the following from the words of the Supreme Court of Alabama, in the case of Allen v. Intendant of La Fayette, 89 Ala. 641, 8 South. 30, 9 L. R. A. 497, is directly applicable to the facts in the case before us: "But back of that contract, and back of those warrants, there is, on the facts presented by the bill and accentuated by the answers, not only a moral but a legal liability resting on the municipality of LaFayette, and on its officers, to repay the money which came from Mrs. Frederick and has been used by the corporation for authorized corporate purposes. In other words, the town of LaFayette is liable as upon an implied assumpsit, not under, but wholly apart from the unauthorized contract, and not for the amount its officers borrowed from Mrs. Frederick, but for the amount of her money which they received and applied to the

purchase of a house which the charter authorized them to buy and the town to hold, which was reasonably necessary to the exercise and performance of expressly granted and imposed functions and duties, and which the use of her funds had enabled the corporation to acquire and devote to its legitimate purposes."

The judgment and order appealed from are reversed.