LOVELETT, Respondent, v. HEUMPFNER et al., Appellants.

(141 N. W. 1080.)

1. **Pleading—Single Cause of Action—Conspiracy—Election Between Causes.**

    A complaint alleging that defendant and her mother conspired together and decoyed plaintiff into their house and locked the doors while the daughter horsewhipped plaintiff, the mother giving the daughter the horsewhip and preventing plaintiff's escape, states but one cause of action against the defendants, and that for assault and battery, and not for conspiracy or for false imprisonment; and plaintiff was not bound, on the trial, to elect as between alleged causes of action.

2. **Appeal—Record—Assignments of Error—Resort to Record.**

    Where the printed contents of the record do not disclose facts upon which assignments of error can fairly be determined

without resort to original record, the assignments will not be considered, in absence of dispute, shown in briefs, as to facts.

(Opinion filed June 6, 1913.)

Appeal from Circuit Court, Roberts County. Hon. FRANK McNULTY, Judge.

Action by Edna Lovelett against Lizzie Humpfner and another, for damages for assault and battery. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

*George S. Rix,* and *John I. Davis,* for Appellants.

The whole theory of the complaint is the fact of the defendants conspiring together.

The court erred in not compelling plaintiff to elect, especially as to whether she should stand upon the theory of an assault and battery or whether upon a cause of action of conspiracy to commit an assault and battery.

It is very hard to say whether the jury believed that the defendants had conspired together to commit the assault and battery or whether the damages given by the jury were such as were given merely for assault and battery.

*Howard Babcock,* for Respondent.

The complaint sets up a conspiracy between the defendants which was carried out by perpetrating an aggravated assault and battery upon the person of the plaintiff. Under the generally recognized rule of pleading, the complaint is perfectly good. One cause of action only is pleaded, and that is well pleaded. It would have been error for the court to have attempted to require plaintiff to elect among the imaginary distinctions of "false imprisonment" or "assault and battery" or "conspiracy," as attempted to be made by the appellants.

GATES, J. [1] From a judgment awarding the plaintiff the sum of $500 damages and from an order denying a motion for a new trial, the defendants appeal.

The complaint in this action, omitting the prayer, is as follows:

"First. That plaintiff is an unmarried woman, 19 years of age, and for about ten years last past has resided and still resides in Sisseton, in said county and state.

"Second. That the defendant Mathilda Heumpfner is about 50 years of age, and the defendant Lizzie Heumpfner is about 20 years of age, and the daughter of Mathilda Heumpfner, and both the defendants have resided in a house owned by the defendant Mathilda Heumpfner, in Sisseton, in said county and state, for about ten years, and still reside therein.

"Third. That plaintiff and defendants have been slightly acquainted for many years and on friendly terms of acquaintance.

"Fourth. That on April 30, 1912, and a few days prior thereto, the said defendants, Lizzie Heumpfner and Mathilda Heumpfner, her mother, maliciously and unlawfully confederated and conspired together to decoy plaintiff to the home of said defendants and to induce plaintiff to come into the house occupied by defendants as their home, and to lock all of the doors leading out of said house so as to prevent her escape therefrom, and then cruelly, maliciously, and unlawfully to beat, bruise, horsewhip, and otherwise misuse the plaintiff; and that, for the purpose of carrying out said malicious and unlawful conspiracy, the defendant Lizzie Heumpfner, about the 29th day of April, 1912, telephoned to plaintiff's mother in the city of Sisseton asking where plaintiff was, and stating to the plaintiff's mother that she desired very much to see plaintiff to ask her about some one at Browns Valley, and requested plaintiff's mother to ask the plaintiff to come to the home of the defendants for that purpose, and plaintiff's mother then informed defendant that plaintiff was at the home of Roy Steele; and, for the purpose of further carrying out said malicious and unlawful conspiracy, the defendant Lizzie Heumpfner did, on or about the same date, telephone to plaintiff at the home of Roy Steele, near the city of Sisseton, stating to plaintiff that she was very anxious to see here to inquire about some people at Browns Valley, Minn., and asked plaintiff to come to the home of defendants the first time she was in Sisseton; and that further for the purpose of carrying out said malicious and unlawful conspiracy, on the 30th day of April, 1912, the defendant Lizzie Heumpfner met the plaintiff on the street in the city of Sisseton and again stated to plaintiff that she was anxious to see her to talk to her about a party at Browns Valley, Minn., that she had received a picture of a young woman in Browns Valley, Minn., and that she did not know who it was, and that she thought the plaintiff must know the young woman,

and said defendant then requested plaintiff to accompany her to the home of defendants, where she had said picture, for the purpose of looking at said picture and informing defendant who said young woman was, if she knew; that all of said telephone messages and statements and requests by said Lizzie Heumpfner were made as a part of and for the purpose of carrying out said malicious and unlawful conspiracy, aforesaid, between the said defendants, and that by means of said requests, and, in compliance therewith, the said plaintiff was enticed and decoyed to the home of the said defendants on said 30th day of April, 1912, and there met the two defendants, and was by the defendants invited into the house and invited to be seated, and the said defendants, each and both, commenced to visit with and entertain the plaintiff in the same manner as defendants might be expected to entertain any other caller towards whom they had the friendliest feeling; that after a few moments of chatting and visiting, the defendant Lizzie Heumpfner, as a part of said malicious and unlawful conspiracy aforesaid, stated to plaintiff that the picture to which she had referred was upstairs in her room, and asked plaintiff to go upstairs with her to see said picture, and that plaintiff did then go upstairs with the defendant Lizzie Heumpfner, and that, as soon as she started upstairs with Lizzie Heumpfner, the defendant Mathilda Heumpfner, as a part of said malicious and unlawful conspiracy, locked all of the doors leading out of said Heumpfner house so as to prevent plaintiff's escape therefrom, and after the plaintiff had left the room and gone upstairs, as before stated, the defendant Mathilda Heumpfner stated to Hazel Sprank and Mary Honeysett, who were also present in said room, that Lizzie (meaning the defendant Lizzie Heumpfner) was going to give Edna (meaning plaintiff) a good licking; that, as soon as plaintiff and the defendant Lizzie Heumpfner reached the upstairs room, defendant Lizzie Heumpfner pretended to search for said picture, and finally stated that she had hid it under the rug in her room, and thereupon raised up the corner of a rug which covered a floor register leading to the room below, where the defendant Mathilda Heumpfner then was, and the said defendant Mathilda Heumpfner then, as a part of said unlawful and malicious conspiracy aforesaid, passed up through said register to the defendant Lizzie Heumpfner, a rawhide horsewhip, and the said defendant Lizzie Heumpfner then

proceeded to further carry out said malicious and unlawful con-
spiracy, aforesaid, by unlawfully and maliciously making an assault
upon the plaintiff with the said rawhide whip, and did then and
there with the said horsewhip violently and maliciously strike and
beat plaintiff in and about the face, breast, arms, shoulders, and
other parts of the person of the plaintiff, numerous violent blows,
after which the plaintiff escaped from said upstairs room and
took flight down the stairs into the hallway of said house, the out-
side door of which was locked by defendants so as to prevent
plaintiff's escape, and plaintiff attempted to go through another
door out of said hallway into the parlor, where the defendant
Mathilda Heumpfner then was, but that the defendant Mathilda
Heumpfner held said door shut for the purpose of preventing, and
did prevent, plaintiff's escape while the defendant Lizzie Heumpf-
ner, who had pursued plaintiff, continued to maliciously and vio-
lently strike, beat, and bruise plaintiff with the said horsewhip
aforesaid, with several violent blows in and across the face, breast,
shoulders, arms, and other parts of said plaintiff's person, all as a
part of the said malicious and unlawful conspiracy aforesaid.

"Fifth. That by means of said blows so inflicted upon her by
the defendants in and as a part of the conspiracy aforesaid, the
plaintiff was greatly hurt, bruised, and wounded, and was render-
ed sick, sore, nervous, hysterical, and ill, both in mind and body,
and was greatly frightened and humiliated, and suffered great
mental anguish and great bodily pain, and that she has thereby
been damaged in the sum of $5,000."

At the beginning of the trial the defendants moved that plain-
tiff be required to elect as to whether she would stand upon the
cause of action for false imprisonment, assault and battery or con-
spiracy. This motion was denied, and such ruling is the only error
properly presented for our consideration. The contention of ap-
pellants that there were three, or even two, causes of action set
forth in the complaint, is unsound. The essential charge in the
complaint was for assault and battery. The nature of the action
was not changed by the allegations of conspiracy. 8 Cyc. 673,
674. Those allegations merely served to connect the mother with
the principal acts constituting the offense committed by the daugh-
ter. It was alleged that the daughter actually struck the blows,
and that the mother handed up the whip through the floor register,

and that the mother locked the doors and held the door, preventing respondent from escaping from the house. It was not necessary that each defendant unite in the same acts, the sum total of which constituted the offense. 8 Cyc. 622. The allegations which appellants contend constituted the charge of false imprisonment were merely matters of detail showing a continuation of the offense and further connecting the mother with the conspiracy. ' The complaint stands the required test of unity of design. 8 Cyc. 621. It states a good cause of action and only one cause of action against the defendants, viz., for assault and battery. The trial court was clearly right in denying the motion.

[2] We do not consider the other assignments of error for the reason that the printed record does not disclose facts upon which they can fairly be determined without resort to the original record. This we will not do unless the briefs disclose a dispute as to the facts. The attention of attorneys has several times been called to this matter. See Barcus v. Prokop, 29 S. D. 39, 135 N. W. 756; Dring v. St. Lawrence Tp., 140 N. W. 246, and cases cited.

When a dispute as to the contents of the record is properly presented in accordance with our rules, we will examine the original record, but only for the purpose of settling that dispute.

The judgment and order denying a new trial are affirmed.