[Civ. No. 9920.   Third Dist.   Jan. 11, 1961.]

JAMES E. HOLLINGSWORTH et al., Appellants, v. THE
BOARD OF MEDICAL EXAMINERS, Respondent.

A. M. Mull, Jr., and Carl Kuchman for Appellants.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, W. B. Thayer and William L. Gonser, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—This is an appeal from the judgment denying appellants' joint petition for a writ of mandate. The writ was sought to compel respondent board to honor appellants' applications for reciprocity certificates to practice as physicians and surgeons in California.

Appellants, in the proceedings before the board, had met all the requirements for reciprocity certificates touching scholastic training, professional skill and experience, and related matters. They had both practiced for many years as physicians and surgeons in the State of Idaho. Their applications, however, revealed that each had been charged with violations of United States statutory law relative to income taxes and that the charges had been disposed of by pleas of *nolo contendere*. The executive secretary of the board made and filed, in respect of each applicant, a statement of issues that contained the following charges: "That the respondent [applicant] has been guilty of unprofessional conduct as the same is defined in section 2383 of the Business and Professions Code of the State of California in that . . . said respondent herein was duly convicted in the United States District Court for the District of Idaho, Southern Division, upon being adjudged by said court to be guilty of two counts of violation of section 145(b), Internal Revenue Code, Title 26, United States Code, in that he was found guilty upon his plea of nolo contendere of wilfully and knowingly attempting to defeat and evade a large part of income taxes due and owing by him . . . to the United States of America for the calendar years of 1947 and 1948, by filing and causing to be filed with the Collector of Internal Revenue, . . . , false and fraudulent income tax returns . . . for said calendar years, . . . ." Each statement of issues asserted that said convictions were of felonies, and that the crimes adjudged to have been committed involved moral turpitude. Each statement further asserted that the applicant had failed to submit satisfactory evidence to the board that he was a person of good moral character, in accordance with the requirements of sections 2313 and 2320 of the Business and Professions Code, and that by reason of said convictions the applicant was not a person of good moral character. Hearings upon these statements of issues were held

jointly and a single record as to both was made up. At the conclusion of the hearings the board denied the petitions for certificates of reciprocity. Thereafter, appellants herein sought mandate in the Superior Court of Sacramento County, which relief was denied, following which they appealed upon a single record.

The board made the following determination of issues tendered by the statement of issues: "That the respondent has failed to make a satisfactory showing that he is possessed of good character as required by Sections 2313 and 2320 of the Business and Professions Code and that his application ought to be denied." The board further stated: "The facts and matters hereinabove set forth constitute grounds for the denial of respondent's application for said reciprocity certificate under Section 2360 of the Business and Professions Code of the State of California." (Bus. & Prof. Code, § 2360, provides that: "The board shall refuse a certificate to any applicant guilty of unprofessional conduct.")

Appellants contend that the evidence before the board was insufficient to support the board's decision. This contention cannot be sustained. In addition to the record evidence of convictions based on pleas of *nolo contendere* there was testimony elicited from the applicants themselves that they had been originally charged, each of them, with having made false returns of taxable income for a period of five years beginning with 1947 and including 1951; that upon receipt of the pleas of *nolo contendere* covering the years 1947 and 1948, the separate counts for each of the following years included in the indictment were dismissed; that thereafter negotiations occurred between the appellants and the federal government ending in an agreement by each appellant to pay approximately $50,000 in settlement of the government's claims for the five years involved; that the returns made reported only from one-fifth to one-seventh of the actual net taxable incomes; that the punishment inflicted by the court in the criminal case included penal servitude in a federal penitentiary. Appellants offered no explanations in justification of their failure to make proper income tax returns and to pay the proper amount of taxes. There was no testimony to the effect that the returns were based upon innocent miscalculations or mistakes as to the law. In short, from the whole of the evidence concerning the income tax evasions the board could draw the conclusion that the failure to make proper

returns of income was wilful, as was charged in the indictments, and motivated by intent to defraud the government of taxes properly due and owing for personal gain, and that applicants had been guilty of conduct involving moral turpitude consistently and wilfully engaged in over the period of five years and until government investigation ended in the indictments. The board could also consider and find, as it did, that applicants had been guilty of unprofessional conduct through wilful and unexcused violation of law ending in felony convictions.

Appellants argue that convictions based upon *nolo contendere* pleas, which pleas are peculiar to federal, and to some state, criminal procedures, and are not recognized in this state, were not available as evidence in proceedings before the board; that such pleas amounted neither to admissions of guilt of the crimes charged nor to confessions, and did not evidence lack of good character when used before an administrative agency passing upon license applications in the State of California. This contention is fully answered by the legislation involved. Section 2383 of the Business and Professions Code provides as follows:

"The conviction of either (1) a felony or (2) any offense, misdemeanor or felony, involving moral turpitude constitutes unprofessional conduct within the meaning of this chapter. The record of conviction shall be conclusive evidence only of the fact that the conviction occurred. The board may inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline or to determine if such conviction is of an offense involving moral turpitude. A plea or verdict of guilty or a conviction following a plea of nolo contendere made to a charge of a felony or of any offense involving moral turpitude is deemed to be a conviction within the meaning of this section. The board may order the license suspended or revoked, or may decline to issue a license, when the time for appeal has elapsed, . . . ."

This is valid legislation referable to the exercise of the police power. As said in *Hawker* v. *People of the State of New York,* 170 U.S. 189 [18 S.Ct. 573, 42 L.Ed. 1002, 1004]:

"On the other [hand], it is insisted that within the acknowledged reach of the police power, a state many prescribe the qualifications of one engaged in any business so directly affecting the lives and health of the people as the practice of medicine. It may require both qualifications of learning and

of good character, and, if it deems that one who has violated the criminal laws of the state is not possessed of sufficient good character, it can deny to such a one the right to practice medicine, and, further, it may make the record of a conviction conclusive evidence of the fact of the violation of the criminal law and of the absence of the requisite good character. . . .

". . . No precise limits have been placed upon the police power of a state and yet it is clear that legislation which simply defines the qualifications of one who attempts to practice medicine is a proper exercise of that power. Care for the public health is something confessedly belonging to the domain of that power. The physician is one whose relations to life and health are of the most intimate character. It is fitting, not merely that he should possess a knowledge of diseases and their remedies, but also that he should be one who may safely be trusted to apply those remedies. Character is as important a qualification as knowledge, and if the legislature may properly require a definite course of instruction, or a certain examination as to learning, it may with equal propriety prescribe what evidence of good character shall be furnished. These propositions have been often affirmed. . . .

"But if a state may require good character as a condition of the practice of medicine, it may rightfully determine what shall be the evidences of that character. We do not mean to say that it has an arbitrary power in the matter, or that it can make a conclusive test of that which has no relation to character, but it may take whatever, according to the experience of mankind, reasonably tends to prove the fact and make it a test. . . . Whatever is ordinarily connected with bad character or indicative of it, may be prescribed by the legislature as conclusive evidence thereof. It is not the province of the courts to say that other tests would be more satisfactory, or that the naming of other qualifications would be more conducive to the desired result. These are questions for the legislature to determine. . . . It is not open to doubt that the commission of crime, the violation of the penal laws of a state, has some relation to the question of character. It is not, as a rule, the good people who commit crime. When the legislature declares that whoever has violated the criminal laws of the state shall be deemed lacking in good moral character it is not laying down an arbitrary or fanciful rule,—one having no relation to the subject-matter,—but is only appealing to a well-recognized fact of human experience; and if it may make

a violation of criminal law a test of bad character, what more conclusive evidence of the fact of such violation can there be than a conviction duly had in one of the courts of the state? . . .

"It is no answer to say that this test of character is not in all cases absolutely certain, and that sometimes it works harshly. Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application, and no inquiry is permissible back of the rule to ascertain whether the fact of which the rule is made the absolute test does or does not exist. Illustrations of this are abundant."

The foregoing principles were applied in a case involving the situation arising where convictions were based upon pleas of *nolo contendere* in the case of *Berardi* v. *Rutter,* reported in 23 N.J. 485 [129 A.L.R.2d 705, 63 A.L.R.2d 767, et seq.], decided by the New Jersey Supreme Court, March 4, 1957. The case involved review of an order of the superintendent of State Police revoking a private detective's license where as cause for revocation the detective was charged with having been convicted and sentenced for the misdemeanor of delivering a false return to the United States Collector of Internal Revenue, the conviction being based on a plea of *nolo contendere.* Said the New Jersey court, at page 773 [63 A.L.R.2d]:

". . . The Legislature may make a violation of the law a test of bad character and when it does so it is conclusive evidence as to the bad character of the individual, and this is so whether the conviction results from the verdict of a jury or is entered on a plea of nolo contendere. . . .

"There is no such provision in this statute, but that is not to say that a conviction based on a plea of nolo contendere is not evidential on the question of good character, competence or integrity. There is no sound reason why the proof of the entry of the plea of nolo contendere to an information charging fraud should not be persuasive evidence as to the lack of character, competency or integrity, and that it should have the same weight and effect as it has when such proof is offered in a trial to attack the credibility of a witness or a party. . . .

"Good people as a rule do not commit crimes or violations of the law, and it is equally true that credibility is everywhere recognized as an essential of good character and integrity. . . .

". . . [P]roof of such a plea is receivable in evidence in a proceeding under a statute enacted under the police power

where the test or standard is the good character, competency or the integrity of the applicant or licensee. The weight to be given to it rests in the judgment of the administrative officer charged with the duty of enforcing the statute."

It was competent for the Legislature to declare as it did that a record of conviction should be conclusive evidence of the fact that the conviction occurred; that a conviction following a plea of *nolo contendere* made to a charge of a felony should be deemed to be a conviction within the meaning of the section and that upon that being shown the board might inquire into the circumstances surrounding the commission of the crimes charged in order to fix the degree of discipline or to determine if such convictions were, in fact, for offenses involving moral turpitude. It was equally competent for the Legislature to declare that the board might decline to issue a license when the time for appeal had passed or a judgment of conviction had been affirmed on appeal. The fact that this legislation, making convictions based upon pleas of *nolo contendere* a test of good moral character, was passed after the conduct involved had occurred and after the criminal charges had been made does not make the legislation bad as being ex post facto. (*Hawker* v. *People of the State of New York, supra.*)

It is true that appellants introduced before the board much persuasive evidence that they were men of good moral character. This evidence consisted of testimonials from a number of practicing physicians in Idaho who knew them well personally, and who testified to their good moral character and to their competency in the field of medicine. There were also testimonials from physicians and surgeons in official positions; in fact, the array of writers of laudatory testimonial letters was lengthy and impressive. All of this, however, did no more than raise a conflict in the evidence upon the issues of unprofessional conduct and good moral character. The findings of the board are supported by substantial evidence which ends the inquiry here as it did in the trial court.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 8, 1961.