432 N.W.2d 274 (1988)
In the Matter of the Application of Harry M. KATZ, M.D., Appellant,
v.
SOUTH DAKOTA STATE BOARD OF MEDICAL AND OSTEOPATHIC EXAMINERS, Appellee.
No. 16109.
Supreme Court of South Dakota.
Argued August 29, 1988.
Decided November 30, 1988.
Rehearing Denied January 5, 1989.
*275 Curtis L. Carroll, Vermillion, and Tom D. Tobin, Alvin Pahlke of Tobin Law Office, P.C., Winner, for appellant.
John H. Zimmer of Zimmer and Duncan, Parker, for appellee.
WUEST, Chief Justice.
Dr. Harry M. Katz (Katz) appeals a circuit court order upholding the decision of the State Board of Medical and Osteopathic Examiners (Board) denying his application for a license to practice medicine in South Dakota. Katz's licensure was requested upon reciprocity without an examination. We affirm.
Katz obtained his medical degree from the University of Alabama School of Medicine in Birmingham, Alabama, in 1950. In 1951, he obtained by written examination his initial medical license from the state of Alabama. This license was surrendered in 1972, after Katz was convicted by a federal jury in Florida of five felony counts of making false and fraudulent Medicare claims.[1] A subsequent application to reinstate the license was denied.
In 1953, Katz obtained by examination a license to practice medicine in Florida. This license was revoked in 1968 for improperly performing physical examinations for the Federal Aviation Administration *276 (FAA) and permitting an unlicensed employee to practice medicine.
The record reveals that Katz also obtained licenses to practice medicine in Kentucky (1951) and in Missouri (1952). These licenses were obtained by reciprocity. Both licenses were revoked by the respective states, although Katz's license to practice in Missouri was later reinstated and is currently in force.
In 1973, Katz obtained a temporary institutional license to practice medicine in the Louisiana State Penitentiary and practiced under that license for seven and one-half years. That license is no longer in force and Katz's application for full licensure in Louisiana was denied. Katz's application for licensure in Kansas was also denied and his application for a license to practice in the District of Columbia was withdrawn prior to a contested hearing.
The record also indicates that Katz was previously refused hospital privileges in two Florida hospitals  one in 1955 and another in 1956  and in one Missouri hospital in 1982. In addition, Katz's license to distribute controlled substances in Missouri was placed on probationary status for five years in 1982, because his application for the license failed to disclose his prior offenses and license revocation proceedings.
Katz applied for licensure by reciprocity in South Dakota on September 17, 1981. Although he was no longer licensed to practice medicine in Alabama, Katz based his request for licensure on his written examination grades from that state. After a hearing on May 4, 1982, the Board entered a decision denying Katz a license to practice medicine in South Dakota. The Board determined that it was not in the best interest of the state to grant licensure to Katz for the following reasons:
(1) Katz's license to practice medicine in Florida was revoked for performing improper and incomplete FAA physical examinations and permitting an unlicensed employee to perform medical services;
(2) Katz was adjudged guilty of five felony counts of making false and fraudulent Medicare claims which resulted in his being incarcerated in a federal prison;
(3) After Katz's conviction of felonious Medicare fraud in Florida, his license to practice medicine in Alabama was surrendered or revoked and a subsequent application to reinstate the license was denied;
(4) Katz's application for licensure in South Dakota was predicated on examination grades he submitted from Alabama and Florida, states in which he no longer held current licenses to practice; and
(5) Katz was ineligible for medical licensure in this state without examination based upon his application and material furnished by him.
The Board further concluded that Katz's behavior upon which the revocation of his licenses was predicated would constitute unprofessional and dishonorable conduct in this state, as set forth in SDCL 36-4-30.[2]
On July 14, 1986, Katz again applied to the Board for a license to practice medicine in this state. His request for licensure by reciprocity without examination was again based on his written examination grades from Alabama and certification of those grades from the Alabama Board of Medical Examiners accompanied his application. The Secretary of the Alabama Board of Medical Examiners, however, refused to certify that Katz's certificate to practice medicine in Alabama had not been suspended or revoked and that Katz possessed good moral character or was worthy of professional recognition. The Secretary further refused to recommend to the Board that Katz was a fit and proper person to receive recognition as an applicant for reciprocity.
*277 In his application, Katz disclosed his previous conviction for Medicare fraud, the revocation of his licenses to practice medicine in Florida, Alabama and Kentucky, the denial of his applications for licensure in Louisiana and Kansas, and his having been refused hospital privileges in Florida and Missouri. Katz, however, failed to disclose that his controlled substances certificate had been placed on a five-year period of probation by the state of Missouri in 1982.
The Board conducted a hearing on Katz's application for licensure by reciprocity on January 14, 1987, at which it took notice of its findings of fact, conclusions of law and decision from Katz's previous application. Subsequently, the Board entered findings of fact, conclusions of law and its decision again denying Katz's application for a South Dakota license by reciprocity. The Board's denial was essentially based upon two grounds:
(1) Katz's request for licensure by reciprocity without examination was based upon his written examination grades from Alabama, but his license in Alabama had been revoked. His current license from Missouri had been obtained by reciprocity and was not issued upon any written examination. SDCL 36-4-19 only authorizes the Board to issue a license by reciprocity without examination if the applicant holds a currently valid license that was obtained by written examination. Because Katz's current license was not obtained by written examination, he could not be granted licensure by reciprocity.
(2) Katz's conduct which resulted in the revocation of his license in Florida and his conviction for Medicare fraud resulting in the revocation of his license in Alabama constituted unprofessional and dishonorable conduct under SDCL 36-4-30. This alone was basis for which licensure could be denied.
On appeal to this court, Katz essentially raises three issues. First, Katz contends that SDCL 36-4-19 operates to deny him licensure in this state in violation of his right to substantive due process under the 14th Amendment to the United States Constitution[3] and Article VI, § 2 of the South Dakota Constitution.[4] Secondly, Katz claims that the Board was arbitrary and capricious in finding that he committed acts of unprofessional conduct. Finally, Katz asserts that the Board violated his right to procedural due process in that it was predisposed to deny his application.
We first address whether the denial of Katz's licensure by reciprocity under SDCL 36-4-19 violated his right to substantive due process under the federal and state constitutions. SDCL 36-4-19 provides:
The board of medical and osteopathic examiners may in its discretion, without examination, issue a license to any applicant holding a currently valid license or certificate which shall have been issued to an applicant by the examining board of the District of Columbia, or any state or territory of the United States, or the national board of osteopathic physicians and surgeons or any province of Canada, from which a license was obtained by a written examination given by such board, if the legal requirements of such examining board at the time of its issuing such license or certificate shall be in no degree or particular less than those of this state at the time when such license is presented for registration.... (Emphasis supplied).
This statute authorizes the Board to waive the examination usually required of applicants for licensure pursuant to SDCL 36-4-11[5] *278 and issue a license by reciprocity to an applicant who holds a current license from another state issued upon written examination. Katz challenges the constitutionality of SDCL 36-4-19 as it applies to him. He contends that the statute's requiring a valid medical license issued upon written examination by another state as a prerequisite for licensure by reciprocity in this state is unreasonable and unrelated to the objectives sought to be achieved by SDCL title 36. We disagree with Katz's contention.
The enactment of laws regulating the practice of medicine is universally regarded as a duty of the state in the exercise of its inherent police power. State v. Doran, 28 S.D. 486, 491, 134 N.W. 53, 55 (1912). See also Michigan Ass'n of Psychotherapy v. Blue Cross, 118 Mich.App. 505, 325 N.W.2d 471, 480 (1982); State, Ex Rel. Iowa Dept. of Health v. Van Wyk, 320 N.W.2d 599, 605 (Iowa 1982); State Bd. of Registration v. Giffen, 651 S.W.2d 475, 479 (Mo. banc 1983); McCoy v. Com., Bd. of Medical Ed. & Licensure, 37 Pa.Cmwlth. 530, 391 A.2d 723, 727 (1978). The purpose of such laws is to "safeguard the public health and protect the public from incompetence, deception and fraud." Blue Cross, 325 N.W.2d at 479. See also Van Wyk, 320 N.W.2d at 605; Hill v. Highland Park General Hospital, 80 Mich.App. 334, 263 N.W.2d 362, 365 (1978); 70 C.J.S. Physicians and Surgeons § 7 at 385 (1987). It is well-established that the state not only may prescribe qualifications which persons must possess to lawfully practice medicine and surgery, but also may require persons desiring to enter such practices to obtain a license or certificate of competency. Doran, 28 S.D. at 491-92, 134 N.W. at 56. The method or means by which these qualifications are demonstrated is largely, if not wholly, within the legislature's discretion. Id. at 492, 134 N.W. at 56.
When these laws regulating the medical profession are attacked, substantive due process requires that the exercise of the police power must not be unreasonable or unduly oppressive and that the regulatory means employed by the legislature must have a real and substantial relation to the objects sought to be attained.[6]See Crowley v. State, 268 N.W.2d 616, 619 (S.D.1978); State v. Nuss, 79 S.D. 522, 528, 114 N.W.2d 633, 636 (1962); Farmers Educational & Coop. Union v. Circuit Court of Charles Mix County, 73 S.D. 203, 209, *279 40 N.W.2d 402, 405 (1949). In addition, the legislature, under the guise of protecting the public health, may not arbitrarily interfere with a person's right to pursue the medical profession or impose unreasonable restrictions upon the practice of medicine. See Crowley, 268 N.W.2d at 619; Nuss, 79 S.D. at 528, 114 N.W.2d at 636.
Testing SDCL 36-4-19, as it applies to Katz, against these principles of substantive due process, we cannot conclude that requiring him to hold a valid license issued upon examination by another state is wholly unreasonable and arbitrary and bears no relation to the public interest in adequate medical care. The statutory scheme for licensure by reciprocity requires that an applicant be a reputable physician who is a graduate of an accredited medical college and who is licensed by another state having requirements substantially equivalent to those of South Dakota. The applicant must also be prepared to demonstrate that he possesses the qualifications to provide the same standard of medical care as provided by a physician licensed in this state. These qualifications include firmness of moral character befitting the medical profession as well as competency to practice medicine. SDCL 36-4-19 was clearly intended to protect the public from incompetence, deception and fraud. Certainly such a strong public interest mandates that the Board should have the rights to exercise its discretion, examine the manner in which Katz obtained Missouri licensure, and refuse to accept the judgment of its counterpart in that state.[7]
We next examine whether the Board acted arbitrarily and capriciously or abused its discretion in finding that Katz engaged in acts of unprofessional conduct sufficient to deny licensure. Because the manner in which an administrative agency reaches a decision constitutes a question of law, we may freely review the procedures followed by such agency. See SDCL 1-26-36;[8]Permann v. Dept. Labor, Unemp. Ins. D., 411 N.W.2d 113, 116 (S.D.1987).
SDCL 36-4-11 requires that all applicants for licensure, by reciprocity or otherwise, shall, among other things, give satisfactory proof of good moral character. Although good moral character is not defined, SDCL 36-4-30 enumerates several examples of unprofessional or dishonorable conduct by a physician, any one of which is sufficient to constitute grounds for revocation of a physician's license. Among those grounds are conviction of a felony, conviction of any criminal offense arising out of the practice of medicine, conviction of any criminal offense involving moral turpitude, falsification of the records of a patient, or making false statements or misrepresentations in any application or information presented for a South Dakota license. There is sufficient evidence in the record to find Katz committed all of these acts.
Incorporating its 1982 decision, the Board again concluded that Katz had engaged in unprofessional and dishonorable conduct as evidenced by his license revocation in Florida for performing improper FAA physicals and assisting an unlicensed person in the practice of medicine, the surrender of his Alabama license after being convicted of five counts of Medicare fraud and incarcerated in a federal penitentiary, *280 and his denial of licensure in other states. The Board also considered another factor. Since Katz's initial application for medical licensure in this state, his license to distribute controlled substances in Missouri was placed on probation because he failed to disclose on his application for that license his previous license revocation proceedings. The probationary status of this license was not disclosed to the Board even though it was still in effect at the time of the Board's hearing on Katz's application in January, 1987.
Katz argues that the Board abused its discretion in focusing on these acts instead of on Katz's good medical record over the last fourteen years. Katz points out that the proper inquiry when examining the moral character of a person seeking professional licensure concerns the applicant's character at the time of application.
Although there is merit to Katz's assertion (see In Re Haukebo, 352 N.W.2d 752, 754 (Minn.1984)), the legislature may define that which constitutes unprofessional or dishonorable conduct which may absolutely disqualify a person from the practice of medicine. Hollingsworth v. Board of Medical Examiners, 188 Cal.App.2d 172, 10 Cal.Rptr. 343, 345-46 (1961). One who has violated a criminal law may thereafter reform and, in fact, become possessed of good moral character. The legislature, however, has "power in cases of this kind to make a rule of universal application, and no inquiry is permissible back of the rule to ascertain whether the fact of which the rule is made the absolute test does or does not exist." Id. 10 Cal.Rptr. at 346 (quoting Hawker v. People of the State of New York, 170 U.S. 189, 197, 18 S.Ct. 573, 576, 42 L.Ed. 1002, 1006 (1898)). Although, in a certain sense, such a rule is arbitrary in determining what shall be evidence of good moral character, the legislature can make a test such as the conviction of a crime conclusive. Hollingsworth, 10 Cal.Rptr. at 347. Evidence of current good moral character does no more than raise a conflict in the evidence upon such an issue. Id.
We are not left with a definite and firm conviction that the Board acted arbitrarily or capriciously or abused its discretion in determining that Katz's conduct was unprofessional. In the absence of such arbitrariness or capriciousness or an abuse of discretion, we affirm the Board's decision.
The final issue we must determine is whether the Board violated Katz's rights to procedural due process. Katz alleges that his rights to procedural due process were violated because the Board was biased and predisposed to reject his application on the basis of its decision in 1982. There is no evidence in the record to support this contention. Although the Board considered the facts underlying its previous decision, it also relied on Katz's conduct after his application was submitted in 1981.
Katz argues that his 1986 application was "stronger" since he had the benefit of another five years of practice. This merely goes to the weight of the evidence. It is presumed that the Board acted fairly and impartially. Schneider v. McLaughlin Independent School Dist., 90 S.D. 356, 241 N.W.2d 574, 578 (1976). Katz failed to prove actual bias or the existence of circumstances that lead to a conclusion of bias or prejudgment.
For the foregoing reasons, the decision of the circuit court is affirmed.
MORGAN and HENDERSON, JJ., concur.
SABERS, J., specially concurs.
MILLER, J., concurs in result.
SABERS, Justice (specially concurring).
I would affirm solely on the merits and not reach the issue concerning the constitutionality of SDCL 36-4-19.[*]
MILLER, Justice (concurring in result).
I suggest that it is not necessary to decide whether the Board was arbitrary or capricious, abused its discretion, or violated Katz' procedural due process rights.
*281 By holding the statute, SDCL 36-4-19, to be not unconstitutional, we totally dispose of the other issues. This was conceded and acknowledged by both counsel at oral argument.
SDCL 36-4-19, in salient part, states: "The board ... may in its discretion, without examination, issue a license to any applicant holding a currently valid license or certificate which shall have been issued to an applicant by the examining board of ... any state ... from which a license was obtained by a written examination given by such board...."
Because Katz does not hold a currently valid license or certificate issued by the examining board from which the license was obtained by a written examination, the Board has no authority or discretion to exercise. The legislature simply has not given Board permission to consider Katz' request for a license.
NOTES
[1] The Alabama Board of Medical Examiners initially revoked Katz's license to practice medicine. This license was later reinstated on the condition that Katz would surrender it.
[2] SDCL 36-4-30 provides, in pertinent part:

The phrase "unprofessional or dishonorable conduct" as used in this chapter shall be construed to include:
* * * * * *
(6) Conviction of any criminal offense of the grade of felony, or any conviction of a criminal offense arising out of the practice of medicine or osteopathy, or one in connection with any criminal offense involving moral turpitude[.]
[3] Section 1 of the 14th Amendment provides, in pertinent part:

No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[4] Article VI, § 2 of the South Dakota Constitution provides:

Due process  Right to work. No person shall be deprived of life, liberty or property without due process of law. The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union, or labor organization.
[5] SDCL 36-4-11 provides:

Any person desiring to engage in the practice of medicine or osteopathy, surgery, or obstetrics in any of their branches in this state shall make application to the board of medical and osteopathic examiners for a license. Such applications shall contain, and be accompanied by, such information as the board may by regulation require. Such license shall be granted to any applicant who shall give satisfactory proof of being at least eighteen years of age, of good moral character, a citizen of the United States or a person who has declared his intention to become a citizen upon the following conditions: the applicant shall pass an examination in those subjects determined by the board to be necessary to establish medical competence, and in addition thereto shall present evidence of having graduated and received a diploma from an approved medical or osteopathic college, approved by the board, such diploma to be submitted to the board for inspection and verification. If such diploma is from a medical or osteopathic college outside the United States, the board of examiners may require such further proof of competence as its rules may require. Such applicant shall also present evidence satisfactory to the board that he has successfully completed a program as an intern or resident, or such equivalent service as may be approved by the board, in a hospital approved by the board, for such time as the board may by regulation legally provide.
[6] We note that no fundamental right is at stake here. The Supreme Court has stated, "there is no right to practice medicine which is not subordinate to the police power of the States." Lambert v. Yellowley, 272 U.S. 581, 596, 47 S.Ct. 210, 214, 71 L.Ed. 422, 429 (1926). Accordingly, strict scrutiny need not be applied.

When a constitutional challenge involves neither a suspect classification nor a fundamental right, the Supreme Court applies the rational basis test to assess whether the statute is violative of the 14th Amendment to the Constitution of the United States. The rational basis test requires statutes to be reasonably related to a legitimate state interest. See Friedman v. Rogers, 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100, 114-15 (1979); City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511, 517 (1976). The test applied by this court under our constitution is more stringent. It requires statutes to bear a real and substantial relation to the objects sought to be attained. Crowley, 268 N.W.2d at 619.
[7] Katz's license to practice medicine in Missouri was obtained by reciprocity under circumstances strongly suggesting no meaningful examination of his qualifications and character. According to his own testimony, he obtained this license "without a hearing, without any witnesses, without anything."
[8] SDCL 1-26-36 provides, in pertinent part:

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in light of the entire evidence in the record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
[*] I am concerned that an in-depth analysis of SDCL 36-4-19 would demonstrate unconstitutional discrimination against persons who have obtained their license by reciprocity, which bears no reasonable relationship to the purpose or object sought to be accomplished. The test a person takes to obtain a license and the results thereof, not reciprocity, bear a real relationship to the statutory licensing objective. The opinion sets out the "real and substantial" test as the applicable test to determine the constitutionality of the statute, yet attempts to uphold the statute under a much lesser standard of scrutiny.

The logic of Justice Miller's special writing is directly on point. If the statute is in fact constitutional, then that totally disposes of all other issues. In contrast, the majority goes to great lengths to decide these other issues. Therefore, the statute must be unconstitutional.
Even the licensing board must have had some concern with the constitutionality of the statute and with their past actions under the statute, or else they would not have spent the time and effort to hear and decide on the merits. I commend their wisdom and suggest we follow suit and avoid the constitutional question altogether.