2004 SD 30

**Deanna STREETER, Claimant
and Appellant,**

v.

**CANTON SCHOOL DISTRICT,
Employer and Appellee,**

and

**Associated School Boards of South Dakota Worker's Compensation Trust
Fund, Provider and Appellee.**

No. 22748.

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 2003.

Decided March 3, 2004.

Stephanie E. Pochop of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, for appellant.

Karla L. Engle of Tieszen Law Office, Pierre, for appellees.

FULLER, Circuit Judge.

[¶ 1.] Deanna Streeter (Streeter), appeals from a circuit court order denying workers' compensation benefits for total disability and medical care. We affirm in part and reverse in part.

## PROCEDURAL HISTORY

[¶ 2.] Streeter filed a workers' compensation claim. The Department of Labor (Department) awarded Streeter total disability benefits and ordered the Canton School District (Employer) to pay various claimed medical expenses. Employer appealed. Following a hearing before the Honorable Steven L. Zinter, the case was reversed and remanded to Department for further proceedings. Department entered amended findings of fact and conclusions of law denying Streeter's permanent total disability benefits but continuing the payment of certain medical expenses. Both Employer and Streeter appealed. The Honorable Lori S. Wilbur affirmed Department's denial of permanent total disability benefits and reversed Department's order requiring payment of additional medical expenses.

## FACTS

[¶ 3.] While teaching a class with special needs students at school on April 18, 1996, Streeter strained her low back by catching an 80–pound student as he began to fall. Streeter was initially treated by Dr. Tieszen, a chiropractor, for an acute lumbar sprain and spasms. After two

months of treatment resulted in no improvement, Dr. Tieszen referred her to an orthopedist.

[¶ 4.] Streeter also saw Dr. Held, her family doctor, who documented Streeter's pain which sometimes incapacitated her. Dr. Held prescribed pain medications and pool therapy. He released her to light duty work in mid-May 1996, restricting her from lifting, pushing, shoving, bending, squatting and getting down on all fours.

[¶ 5.] Dr. MacRandall, the Chief of Orthopedics at Sioux Valley Hospital, began to see Streeter in July 1996. She complained of pain and difficulty with sitting, sleeping, tingling, numbness and weakness of her legs. Dr. MacRandall initially diagnosed her with low back strain and prescribed medication. Ultimately, he ordered an MRI which showed a mild lumbar disk bulge, moderate bilateral facet hypertrophy and moderate spinal stenosis, a narrowing of the spinal cord. Dr. MacRandall opined that the stenosis predated the injury but was aggravated by Streeter's work incident. He testified that the April 1996 work injury was a major contributing cause to her disability impairment and need for treatment and that it was a permanent aggravation of her pre-existing condition. He believed that her complaints of pain, numbness and tingling were consistent with her diagnosis.

[¶ 6.] Streeter returned to Dr. MacRandall in November 1996 complaining of problems with standing, staying in one position, pain going down the right leg, numbness of her right heel and scapular pain. Dr. MacRandall testified that these conditions were consistent with his diagnosis. Streeter asked Dr. MacRandall about returning to work. He gave her some work limitations but instructed her to avoid activities that bothered her. In 1996 Dr. MacRandall concluded that Streeter

could work four hours a day, advancing to eight over time, but should not lift more than fifteen pounds.

[¶ 7.] In January 1997 Dr. MacRandall referred Streeter to Dr. William Asfora, a neurologist. Streeter complained to him of her pain. Dr. Asfora agreed with Dr. MacRandall that Streeter had spinal stenosis which was aggravated by her work injury. Dr. Asfora gave her a fifteen pound weight restriction and thought she could do intermittent standing and sitting.

[¶ 8.] Dr. Asfora recommended surgery and Dr. MacRandall concurred that a decompression surgery of L4–5 with posterior fusion was appropriate as it would give her more space around her nerves and lessen her pain.

[¶ 9.] After another MRI, Dr. Asfora performed spinal surgery in February 1998. The procedure improved her sitting time but generally worsened Streeter's back pain.

[¶ 10.] Dr. Asfora and Dr. MacRandall found no indication that Streeter was malingering. A psychological evaluation was conducted by Dr. Hartman. Dr. Hartman performed the Minnesota Multi–Phasic Inventory (MMPI) and interviewed Streeter. He opined that Streeter was experiencing acute stress, but no malingering, exaggeration or misrepresentation was evident.

[¶ 11.] Neither Dr. MacRandall nor Dr. Asfora were able to specifically define Streeter's functional capacity. She was referred for evaluation of work abilities. In January 1998, physical therapist Scott Vandenbosch at McKennan Hospital attempted a Functional Capacities Examination (FCE), sometimes described as a Functional Capacity Analysis (FCA). The FCA was not completed because of Streeter's reported pain. Vandenbosch reported observations of objective findings. There were discrepancies between the pain

Streeter reported and pain behaviors she exhibited. He observed, for example, that "pain behavior," both verbally and nonverbally, was not accompanied with typical alterations in body mechanics, substitutions of movement patterns or changes in body posture that are often seen with reports of significantly increased pain. Vandenbosch further found that in the three separate weight-lifting tests Streeter reported significant increased pain in performing these tests, yet her complaints were not accompanied by objective indications that she was reaching her maximum level of function. Vandenbosch concluded that Streeter self-limited her sitting and standing capabilities. She did not show any weight shifting, guarding, favoring of a body part, or other behavior which would indicate intolerance to static and prolonged standing and sitting. Vandenbosch observed Streeter self-limiting her walking abilities during the FCA, noting that she dragged her right foot during the walking test in a manner that appeared to be exaggerated and attention seeking. Streeter declined to complete the second day of the FCA but Vandenbosch concluded that he knew of no objective evidence to show that Streeter could not have completed the testing on a second day.

[¶ 12.] On February 8, 1999, Streeter was examined at Employer/Provider's request by Dr. Joel Gedan for an independent medical examination. During this examination, Dr. Gedan noted obvious signs of symptom magnification, including a sharp divergence between seated and supine straight leg raising, and generalized "give way" weakness in both legs.* Dr. Gedan diagnosis was chronic low back pain with some thoracic pain and right foot paresphesia related to lumbar spinal steno-

sis and status post L4–5 decompression surgery with no objective findings to support Streeter's ongoing complaints or clinical situation. Dr. Gedan opined that Streeter had reached maximum medical improvement following the February 9, 1998 surgery, because her condition had changed very little since her surgery a year before.

[¶ 13.] It is undisputed that teaching jobs at all times were plentiful, both in 1996 and at the time of the hearing and after. The mere disaffection for her work at the Canton School cannot explain Streeter's loss of continued employment, loss of income, loss of social life, or her willingness to undergo surgery and take prescription medications for her condition especially when other teaching jobs were plentiful. Dr. MacRandall and Dr. Asfora assigned general restrictions which according to Streeter's own vocational expert would allow her to be employed at her above pre-injury wage levels.

## STATEMENT OF ISSUES

Did Department commit error in determining that Streeter was not entitled to total disability benefits?

Did Department commit error in awarding payment for Streeter's past medical bill?

## STANDARD OF REVIEW

[¶ 14.] "The standard of review in an appeal to the Supreme Court from a trial court's appellate review of an administrative decision is de novo: unaided by any presumption that the trial court is correct." *Brown v. Douglas School Dist.*, 2002 SD 92, ¶ 17, 650 N.W.2d 264, 269.

---

* The doctor testified that people should generally be able to raise their legs in roughly the same range of motion whether seated or lying down. "Give way" weakness occurs when the doctor pushes the patient's leg toward her torso, and rather than steadily resist, the patient's leg prematurely "gives way" as it approaches her body.

"Our standard of review, delineated in SDCL 1–26–36, requires us to give great weight to the findings and inferences made the Department on factual questions. We examine agency findings in the same manner as a circuit court to decide if they were clearly erroneous in light of all of the evidence. If after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we reverse. Questions of law, of course, are fully reviewable." *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (citations omitted).

■ [¶ 15.] A significant portion of the record in this case consists of expert opinion. "The trier of fact is free to accept all of, part of, or none of, an expert's opinion." *Johnson v. Albertson's*, 2000 SD 47, ¶ 26, 610 N.W.2d 449, 455 (citations omitted).

> A long-accepted premise is that the purpose of expert testimony is to assist the trier of fact and not to supplant it. Experts do not determine credibility. This State is not a trial-by-expert jurisdiction. The value of the opinion of an expert witness is no better than the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true. It may prove little if only partially true. The credibility of witnesses and the evidentiary value of their testimony fall solely within the province of the [fact finder]. (citations omitted).

*Albertson's*, 2000 SD 47 at ¶ 25, 610 N.W.2d at 455.

■ [¶ 16.] In this case, almost all of the expert testimony that would aid the fact finder in determining whether Streeter suffered an injury was presented via deposition, affidavit, and exhibits. In this regard, we have stated: "When reviewing evidence presented by deposition, we do not apply the clearly erroneous rule but review that testimony as though presented here for the first time." *Day v. John Morrell & Co.*, 490 N.W.2d 720, 723 (S.D. 1992). Under this standard, "we will decide for ourselves the credibility of the deponents and the weight and value to be attached to their testimony." *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992). "When reviewing evidence presented by deposition, we do not apply the clearly erroneous rule but review that testimony as though presented here for the first time." *Foltz v. Warner Transp.*, 516 N.W.2d 338, 341 (S.D.1994).

## ISSUE ONE

[¶ 17.] **Did Department err in determining that Streeter was not entitled to total disability benefits?**

■ [¶ 18.] There are two ways in which a claimant can make out a prima facie case under the odd-lot doctrine. One way is for the claimant to establish obvious unemployability by convincing the trier of fact that she suffers "continuous, severe, and debilitating pain." *Kester v. Colonial Manor of Custer*, 1997 SD 127, ¶ 29, 571 N.W.2d 376, 381. Once a claimant establishes unemployability, "the burden shifts to the employer to show there is suitable employment available in the claimant's community that will accommodate claimant's limitations." *Kester*, 1997 SD 127 at ¶ 29, 571 N.W.2d at 381.

■ [¶ 19.] A claimant's credibility may be affected by evidence of "malingering." Factors that may indicate malingering include a marked discrepancy between the claimed injury and objective findings by a medical expert, and lack of cooperation during evaluations and during the claimant's prescribed treatments. *Albertson's*, 2000 SD 47 at ¶¶ 27–29, 610 N.W.2d at 455–456.

[¶ 20.] Streeter's FCE done by Vandenbosch, found that she did not exhibit the usual physical manifestations of someone with this sort of injury, such as weight shifting, or favoring, or guarding the sensitive area. He also observed that she seriously dragged one foot during a physical test, while she had not done so in the previous test. He also found an inconsistency in how she raised her leg to 90–degrees while sitting but only 60–degress while lying. Vandenbosch noted that when she was asked to resist a push against her leg, she demonstrated "give away," that is, at some point her leg gave way in a fashion that signals symptom magnification. Vandenbosch found no evidence of muscle atrophy that might be expected with nerve injury. Finally, Vandenbosch found no reason to support Streeter's refusal to complete the second day of testing.

[¶ 21.] Dr. Gedan, a neurologist from Minneapolis met two times with Streeter. Dr. Gedan concluded that she demonstrated "profound" symptom magnification based on a number of the same observations made by Vandenbosch. Dr. Gedan performed an electromyogram, which apparently is designed to reveal nerve damage by variations and electric impulses applied to the affected area. Dr. Gedan obtained a negative test. He also noted that the surgery did not improve her condition.

[¶ 22.] Based upon this testimony, after the remand order from Judge Zinter, Department, which had previously determined that Streeter fit within the odd-lot doctrine, reversed itself and determined that Streeter had not established obvious unemployability, that is, continuous, severe and debilitating pain. It further found as a fact that there was suitable employment available in Streeter's community that would accommodate her limitations. Fi-

nally, Department found that SDCL 62–4–53 imposed upon Streeter the burden of making a reasonable, good faith search for work, which she had failed to do. For all of these reasons Department determined that Streeter did not qualify under the odd-lot doctrine.

[¶ 23.] Applying the appropriate review standard, reviewing the medical deposition testimony, deciding for ourselves the credibility of the deponents and the weight and value to be attached to their testimony, we find that the foregoing facts provide sufficient evidence in support of the agency's finding. Accordingly, we affirm the trial court on this issue.

## ISSUE TWO

[¶ 24.] **Did Department err in awarding payment for Streeter's past medical bill?**

[¶ 25.] We next consider whether the trial court erred by denying Streeter benefits for past medical expenses. SDCL 62–4–1 provides that "the employer shall provide necessary . . . medical . . . care." "It is in the doctor's province to determine what is necessary or suitable and proper. *When a disagreement arises as to the treatment rendered or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.*" *Krier v. John Morrell & Co.,* 473 N.W.2d 496, 498 (S.D.1991) (emphasis original).

[¶ 26.] "[W]e have previously acknowledged that there may be instances where nonwork related diseases are nonetheless covered under workers' compensation insurance such as, 'where the treatment for nonwork related disease would be unnecessary but for the work related injury.'" *Mettler v. Sibco, Inc.,* 2001 SD 64, ¶ 9, 628 N.W.2d 722, 724.

[¶ 27.] While the medical testimony from Streeter's treating physicians and from those who examined her at the request of Employer conflicts at times, Dr. MacRandall testified that the April 1996 work injury was a major contributing cause of Streeter's disability, impairment and need for treatment. There was no question in Dr. MacRandall's opinion that Streeter had a permanent aggravation of her preexisting stenosis. Dr. MacRandall was Streeter's treating orthopod. Dr. Asfora, a neurologist, reviewed Dr. MacRandall's records, conducted his own physical and radiological tests, and agreed with Dr. MacRandall that Streeter had spinal stenosis which was exacerbated by her work injury. Dr. Asfora recommended surgery. Dr. MacRandall concurred. The expert retained by Employer, Dr. Gedan, agreed that the surgery was a reasonable and medically necessary surgical intervention, stating "it was therefore reasonable and medically necessary for Dr. Asfora surgical intervention on February 2, 1998."

[¶ 28.] Given the doctors' opinions it is for the employer to show that the treatment was not necessary or suitable and proper. *Krier*, 473 N.W.2d at 498. It is Employer's burden to establish the treatment was not necessary or suitable and proper. Reviewing the record as a whole Employer has failed to meet that burden. Thus, the order of the circuit court is reversed as to the medical expenses.

[¶ 29.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 30.] FULLER, Circuit Judge, for ZINTER, Justice, disqualified.