2005 SD 2

**In the Matter of the Application of Katheryn BENTON.**

**No. 23232.**

Supreme Court of South Dakota.

Argued Nov. 16, 2004.

Decided Jan. 5, 2005.

Mark W. Haigh and Mitchell Peterson of Davenport, Evans, Hurwitz & Smith, L.L.P. Sioux Falls, South Dakota, Attorneys for appellant Benton.

Neil Fulton of May, Adam, Gerdes & Thompson, Pierre, South Dakota, Attorneys for appellee South Dakota Board of Medical and Osteopathic Examiners.

ZINTER, Justice.

[¶ 1.] Katheryn Benton appeals the South Dakota Board of Medical and Osteopathic Examiner's denial of her application for a paramedic license. We affirm, but remand for further proceedings to consid-

er new evidence disclosed at oral argument.

### Facts and Procedural History

[¶ 2.] Katheryn Benton has lived in Kimball, South Dakota since 1995. She is committed to serving her community through a variety of community projects and service organizations. She is employed as an emergency medical technician (EMT).

[¶ 3.] Benton's employment involves a 140 mile drive to Rosebud, South Dakota, where she works in that community's emergency medical assistance service. Benton received her EMT basic license in 1998 and her EMT intermediate license in 2000. In 2003, she became interested in obtaining a paramedic license, which required more training. Benton applied for a paramedic license and the paramedic "student status" necessary for paramedic training.[1] Her initial application was denied because she had a number of felony convictions.

[¶ 4.] Benton requested a hearing before the Board. Following an administrative hearing, the Board denied her application concluding that "Benton's felony convictions constitute unprofessional or dishonorable conduct and lack of good moral character and constitute a basis to deny her application for . . . licensure as an emergency medical technician—paramedic."

[¶ 5.] Benton's felony convictions occurred in Oklahoma in 1994, where she lived before coming to South Dakota. The convictions arose after Benton's friend, Loretta Grandstaff, told Benton that Grandstaff needed money for rent, groceries, and other items. Grandstaff told Benton that Grandstaff's bank would not make her pay for checks that were stolen and used by someone else. Benton ultimately forged several checks with Grandstaff's name. Benton also obtained a false driver's license for Grandstaff. Grandstaff used the forged checks to purchase goods, some of which were given to Benton. Benton also received partial repayment of a loan she had previously made to Grandstaff.

[¶ 6.] Benton later contacted an attorney, turned herself in, and pleaded guilty to the felony charges. The felonies included one count of false application for a driver's license, two counts of obtaining property under false pretenses, and four counts of second degree forgery.[2] She received a sentence that included ten years probation, 100 hours of community service, and a restitution obligation of $3600. Benton was placed on unsupervised probation in 1999.[3]

[¶ 7.] Benton appealed the Board's decision to circuit court. The circuit court affirmed the Board's decision. Benton now appeals to this Court questioning whether the Board was clearly erroneous in adopting certain findings of fact and

---

1. Benton enrolled in a paramedic program in Fort Meade, South Dakota and began the written portion of the training. She was unable to do her clinicals because she was not granted student status. However, the parties have advised this Court that after this appeal was filed, Benton completed a paramedic training program in another state. Therefore, the parties have agreed that all issues relating to the denial of student status are moot.

2. The record reflects that Benton has seven felony convictions, however, at oral argument the Court was informed that the correct number of convictions may be six.

3. We were informed at oral argument that, after the Board rendered its decision and after this appeal was filed, Benton received a pardon for her convictions. Because that fact is not in the record, we have decided this case without considering the effect of Benton's pardon.

whether it abused its discretion in denying her application.

### Decision and Analysis

■ [¶ 8.] The standard of review for administrative appeals is governed by SDCL 1–26–36. *Streeter v. Canton School Dist.*, 2004 SD 30, ¶ 14, 677 N.W.2d 221, 224.

> SDCL 1–26–36 . . . requires us to give great weight to the findings and inferences made [by] the [agency] on factual questions. We examine agency findings in the same manner as a circuit court to decide if they were clearly erroneous in light of all of the evidence. If after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we reverse. Questions of law, of course, are fully reviewable.

*Id.* (citing *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228). A decision of an agency may also be reversed or modified if the decision was an "abuse of discretion or clearly unwarranted exercise of discretion." *City of Frederick v. Schlosser*, 2003 SD 145, ¶ 7, 673 N.W.2d 283, 285; SDCL 1–26–36(6).

### The Board's Findings of Fact

■ [¶ 9.] Benton initially argues that the Board "beefed up" its findings of fact and conclusions of law "after legitimate concerns were raised by Benton" through her objections and her proposed findings of fact and conclusions of law. Benton specifically argues that we should infer that the Board's decision was not based upon its findings of Benton's lack of candor before the tribunal and her lack of moral character because those findings were not included in the Board's original proposals. The Board included those findings in its final decision after receiving Benton's submissions that pointed out those omissions. Thus, the record reflects that the Board apparently considered Benton's submissions and ultimately modified its final findings of fact and conclusions of law to rectify the omissions noted by Benton.

[¶ 10.] SDCL 1–26–25,[4] the relevant provision of the Administrative Procedures Act, requires that an agency decision shall include findings of fact and conclusions of law. Additionally, if in accordance with agency rules a party submits proposed findings of fact, the final decision must include a ruling on the issues raised by the opposing party's submissions. In the present case, the Board apparently elected to follow this procedure because it first issued a proposed decision in the form of proposed findings of fact and conclusions of law.[5] The Board then modified those proposed findings and conclusions after

---

4. SDCL 1–26–25 provides:
   A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. It may affirm, modify, or nullify action previously taken or may direct the taking of new action within the scope of the notice of hearing. It shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding. Parties shall be notified either personally or by mail of any decision or order. Upon request a copy of the decision or order shall be delivered or mailed forthwith to each party and to his attorney of record.

5. Although the Board's proposed findings and conclusions are not labeled as such, those findings and conclusions were served without being dated or signed. Additionally, Benton's objections to those findings and conclusions referred to them as "proposed" findings and conclusions. Therefore, we consider them proposed findings of fact and conclusions of law.

considering Benton's objections and proposals.

[¶ 11.] We note that this procedure reflects compliance with SDCL 1–26–25, rather than any improper bolstering of the Board's ultimate decision. Although this procedure allowed the Board to correct the omission in its proposed decision, the procedure is specifically contemplated by SDCL 1–26–25 (and the corresponding Rule of Civil Procedure, SDCL 15–6–52). Moreover, the procedure is specifically intended to enable an agency to take a second look at the facts and law of a case to correct errors or omissions raised by an objecting party.

[¶ 12.] Therefore, we do not believe that any improper inference should be permitted to be drawn from this accepted procedure. There are many reasons why an agency may add or delete language from its proposed decision. In any given case, it is just as likely that omitted language reflects an oversight as a failure to understand and apply the appropriate law. We decline to adopt any adverse inference because an agency complied with this procedure. Rather, we believe that our review should be confined to the agency's final findings of fact and conclusions of law because they reflect an agency's final decision after a reconsideration of the competing views. A different rule would also require us to speculate as to the reason for the agency's first proposal.

[¶ 13.] Benton next contends that two of the Board's final findings of fact are clearly erroneous. Benton first argues that finding number five—that other person's applications were also denied because of felony convictions [6]—is clearly erroneous. However, the following testimony between counsel for the investigating committee and an employee of the Board supports that finding.

> Counsel: [reading from the minutes of the March 5, 2003 board meeting] Discussion was held regarding EMT student status request made by [J.H.], Katheryn Benton, and [M.W.S.]. Are you familiar with that discussion?
>
> Employee: Yes.
>
> Counsel: All of those applications were denied, as I understand it?
>
> Employee: Yes.
>
> Counsel: Was there a consistent reason for those three folks as to why the denial was made?
>
> Employee: Felony conviction.
>
> Counsel: All three of them?
>
> Employee: Yes.

Therefore, finding of fact number five was not clearly erroneous.

[¶ 14.] Benton next attacks finding of fact number seven,[7] which states that Benton did not disclose all of her felony convictions at the Board hearing. The record reflects that on her application, Benton only indicated that she had a felony conviction for forgery and that the "National Registry has info." Furthermore, during the hearing, Benton essentially indicated that her only felony conviction was for forgery. Benton, however, contends

---

6. The complete finding states:

The South Dakota Board of Medical and Osteopathic Examiners has previously denied license applications for individuals with felony convictions based on the conclusion that it constitutes unprofessional or dishonorable conduct and lack of good moral character in violation of SDCL 36–4B–31, 36–4B–6, and 36–4–30.

7. The complete finding states:

During her testimony before the South Dakota Board of Medical and Osteopathic Examiners, Benton did not disclose her convictions for obtaining property through false pretenses and use of a false or fictitious name to obtain a driver's license.

that she "fully disclosed every *fact* relating to her wrongdoing," and simply because "she d[id] not understand that her plea agreement was for particular *offenses* or *charges* does not mean that she was not forthcoming." (Emphasis added.) Benton finally contends that because her post-hearing affidavits indicated that she *obtained* a driver's license in someone else's name and that she had signed checks for her friend, she "fully disclosed the *conduct* that led to her convictions." (Emphasis added.)

[¶ 15.] We are not persuaded by such parsing of words. The record reflects that neither Benton's hearing testimony nor her post-hearing affidavits ever disclosed that she had been *convicted* of one count of felony false application for a driver's license and two counts of felony obtaining property under false pretenses. Furthermore, Benton called a number of character witnesses at the hearing who were unaware of the driver's license and obtaining property under false pretenses felonies. We finally note that, when asked during the hearing if she had received a benefit from the forgeries, Benton only responded that she "did not get back the funds" that she was owed. However, after the hearing, Benton disclosed that she had received $300 and five bags of groceries from the check-writing scheme. Given the partial disclosures and the fact that some of the "conduct" details were only disclosed *after the hearing*, this finding concerning Benton's testimony *during the hearing* was not clearly erroneous.

*Denial of Licensure for Multiple Felony Convictions–Abuse of Discretion*

[¶ 16.] Benton raises two arguments in support of her contention that the Board abused its discretion in denying her application. She first argues that, based on the Board's conclusions of law, the Board believed that it was *required* to deny a felon's license application regardless of all subsequent professional conduct and evidence of good moral character.

[¶ 17.] We first note that SDCL 36–4B–31 [8] and 36–4–30 [9] expressly authorize the denial of licensure for the conviction of a felony. Furthermore, our prior decision on this question indicated that felony convictions may be considered conclusive evidence of the absence of good moral character. *See Katz v. South Dakota State Bd. of Medical and Osteopathic Examiners*, 432 N.W.2d 274, 280 (S.D.1988). In fact, Benton's identical argument was rejected in *Katz*. In that case, Katz argued "that the Board abused its discretion in focusing on [other] acts instead of Katz's good medical record over the last fourteen years." *Id.* Katz also argued that the proper inquiry when determining one's moral character for professional licensure is "the applicant's character at the time of the application" rather than past conduct. *Id.* This Court rejected these arguments stating that:

> One who has violated a criminal law may thereafter reform and, in fact, become

8. SDCL 36–4B–31 provides:

> The board may deny the issuance or renewal of a license or suspend or revoke the license of any advanced life support personnel issued under this chapter upon satisfactory proof of such individual's gross incompetence, or unprofessional or dishonorable conduct as defined in § 36–4–30 or proof of a violation of this chapter.

9. SDCL 36–4–30 defines unprofessional or dishonorable conduct to include, among other things:

> . . .
> (6) Conviction of any criminal offense of the grade of felony, any conviction of a criminal offense arising out of the practice of medicine or osteopathy, or one in connection with any criminal offense involving moral turpitude.

possessed of good moral character. The legislature, however, has "power in cases of this kind to make a rule of universal application, and no inquiry is permissible back of the rule to ascertain whether the fact of which the rule is made the absolute test does or does not exist." Although, in a certain sense, such a rule is arbitrary in determining what shall be evidence of good moral character, the legislature can make a test such as the conviction of a crime conclusive. Evidence of current good moral character does no more than raise a conflict in the evidence upon such an issue.

*Id.* (internal citations omitted). Therefore, were we to apply *Katz*, the Board would have been authorized to deny Benton's application based on the felony convictions alone. However, we also acknowledge that other, perhaps better reasoned decisions would not support consideration of the conviction alone.[10]

[¶ 18.] We need not, however, resolve this conflict of views in this case because Benton has provided insufficient evidence to support her assertion that this "Board

was under the impression that a finding of conduct listed in SDCL 36-4-30 *requires* denial of an application." On the contrary, two parts of the record reflect that the Board was not under the impression that it was required to deny her application based on her convictions alone.

[¶ 19.] First, this is not a case where the Board refused to consider Benton's current moral character and professional conduct. On the contrary, almost all of the two-hour administrative hearing was devoted to the Board's receipt of such evidence.

[¶ 20.] Moreover, the Board's written decision reflects that it understood that it had discretion to consider Benton's evidence of good character and conduct. Conclusion of law two states in two places that a license *may* be denied for conviction of a felony.[11] Because the term "may" means that an act is discretionary, *Farmland Ins. Companies of Des Moines, Iowa v. Heitmann,* 498 N.W.2d 620, 625 (S.D. 1993), the Board's use of that discretionary term in describing the law that it was applying reflects that it had knowledge of,

---

**10.** *See, Application of Allan S.,* 282 Md. 683, 387 A.2d 271, 275 (1978) (holding that conviction of a crime may be taken into consideration in determining whether applicant for a Bar license has good moral character). However, *Allan* elaborated:

> Although a prior conviction is not conclusive of a lack of present good moral character, particularly where the offense occurred a number of years previous to the applicant's request for admission, it adds to his burden of establishing present good character by requiring convincing proof of his full and complete rehabilitation. See *Application of Davis,* 38 Ohio St.2d 273, 313 N.E.2d 363 (1974); Application of Alpert, *supra.* Thus, a prior conviction must be taken into account in the overall measurement of character and considered in connection with other evidence of subsequent rehabilitation and present moral character. See *In re Dreier,* 258 F.2d 68 (3rd Cir.1958),

and *In re Florida Board of Bar Examiners,* 183 So.2d 688 (Fla.1966).
*Id.*

**11.** Conclusion of law two states:

> An applicant for licensure as an emergency medical technician—paramedic *may* be denied licensure upon proof of unprofessional or dishonorable conduct pursuant to SDCL 26-4B-31. Unprofessional or dishonorable conduct includes conviction of any criminal offense of the grade of felony pursuant to SDCL 36-4-30. An applicant for student status *may* be denied for lack of good moral character pursuant to SDCL 36-4B-6. Benton's felony convictions constitute unprofessional or dishonorable conduct and lack of good moral character and constitute a basis to deny her application for student status and licensure as an emergency medical technician—paramedic. (emphasis added).

and applied its discretion in making its decision.

[¶ 21.] Benton's second argument is that she had the good moral character and absence of dishonorable or unprofessional misconduct to be licensed. Benton begins by emphasizing that "the use of the word 'may' in SDCL 36–4B–13, 36–4B–6, and 36–4B–31 indicates that the Board must exercise its discretion and judgment when evaluating the *entire* application." [12] Benton then argues that consideration of her entire application requires the conclusion that the denial of her application was "clearly erroneous in light of the overwhelming evidence of her good moral character." Benton specifically relies upon evidence that she: volunteered at the senior citizen center, supervised the street painting for the Kimball homecoming each year, chaired the local emergency planning commission for Brule and Buffalo Counties, coordinated the Kimball Ambulance Service (which included check writing authority), taught at Sinte Gleska University, gave away bike helmets in Kimball, and served as past president of the library board and Kimball in Progress, a service oriented women's organization. Benton finally points out that eleven character witnesses testified to her good moral character at the Board hearing.

[¶ 22.] However, the existence of mitigating evidence does not require the conclusion that the Board must exercise its discretion in any particular manner. The Board was free to consider the mitigating evidence, yet impose a sanction permitted by statute. *See Arneson v. Arneson*, 2003 SD 125, ¶ 14, 670 N.W.2d 904, 910 (stating that abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, is arbitrary or unreasonable"); *Schlumbohm v. City of Sioux Falls*, 2001 SD 74, ¶ 14, 630 N.W.2d 93, 96 ("[a]n abuse of discretion is 'discretion exercised to an end or purpose not justified by, and against, reason and evidence' ").

[¶ 23.] Here, the record indicates that the Board considered Benton's multiple felony convictions along with extensive evidence of her current conduct. Considering our deferential standard of review and Benton's six felony convictions, we cannot say that the Board was arbitrary and capricious in concluding that Benton did not meet her burden of proving good moral character and an absence of unprofessional or dishonorable conduct. We therefore hold that the Board did not err in denying

---

12. SDCL 36–4B–13 provides:
The board may issue an appropriate advanced life support license to any person who files a verified application upon a form prescribed by the board, pays the required fee, and furnishes evidence satisfactory to the board that the person has met the following qualifications:
(1) Meets the age, high school, or equivalency test and moral character requirements of § 36–4B–6;
(2) Completes successfully an appropriate course of study approved by the board for the license sought; and
(3) Completes successfully a written and practical examination testing the applicant's knowledge in theoretical and applied prehospital primary care as it applies to the practice of the advanced life support license sought.
SDCL 36–4B–6 provides:
The board may grant authorization for student status in advanced life support upon verification that the applicant meets the following criteria: is at least eighteen years of age; has successfully completed emergency medical technician-basic training; has completed an approved high school course of study or has passed a standard equivalency test; is of good moral character; and has been tentatively accepted in an approved advanced life support training program.
SDCL 36–4B–31, incorporating SDCL 36–4–30 are set forth at notes 8 and 9, *supra*.

Benton's application based on the information available at the hearing.[13]

[¶ 24.] However, we were also advised by counsel at oral argument that Benton has recently received a pardon for her convictions and that she has completed paramedic training in Nebraska. The Board did not have the benefit of that information at the time it heard the matter, and those facts are not in the record. "It is elementary that … this [C]ourt will only deal with matters properly presented by the record." *State ex rel. Scott v. Rooney,* 65 S.D. 510, 275 N.W. 349, 350 (1937). Therefore, we cannot consider the effect of these facts on this appeal. However, when an actual fact is not presented in the record, but is disclosed on appeal, we have affirmed and remanded to conduct further proceedings on the "actual facts." *Id.* We therefore remand this matter to the circuit court with directions to remand to the Board for further proceedings.

[¶ 25.] Affirmed and remanded.

[¶ 26.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

---

**13.** We also reject Benton's argument that the Board abused its discretion because *the Board* failed to introduce evidence of other bad moral character. Benton overlooks the fact that the applicant bears the burden of proving good moral character. SDCL 36–4B–13 provides that the Board may issue a license to any *person who furnishes* evidence satisfactory to the Board that they have met the qualifications for a paramedic license. Because Benton bore the burden of establishing good moral character, the Board had no obligation to offer evidence on this subject.